**Linda GUSKJOLEN (Walters),
Plaintiff and Appellant,**

v.

**Larry GUSKJOLEN, Defendant
and Appellee.**

**Civ. No. 11003.**

Supreme Court of North Dakota.

July 23, 1986.

**640**

Kirschner & Baker Legal Clinic, Fargo, for plaintiff and appellant; argued by William Kirschner.

Kennelly and Pederson, Fargo, for defendant and appellee; argued by William J. Kennelly; appearance by Timothy Jay Pederson.

MESCHKE, Justice.

Linda Walters (formerly Guskjolen) appeals an order denying her motion to require Larry Guskjolen to submit to a mental examination by Linda's expert witness, and denying her motion to restore custody of their daughter to Linda and to restrict Larry's visitation privileges. We affirm.

Larry and Linda had one child, a daughter born in April 1981. In May 1983 the Guskjolens were divorced. Pursuant to stipulation, Linda got custody of the daughter and Larry had specified visitation rights. Larry moved for a change of custody in December 1983, to which Linda responded by moving for increased child support. Larry based his change of custody motion primarily on the fact that Linda had been living with someone who may have physically abused the child.

While those matters were still pending before the referee, Linda brought another motion to restrict Larry's visitation rights, alleging that Larry had sexually abused their daughter. Before the June 8, 1984 hearing on that motion, Linda married Kerry Walters, who faced criminal charges in Minnesota for sexually abusing his own children. Kerry pleaded guilty to various charges of intrafamilial sexual abuse on June 12, 1984, and was sentenced on August 7, 1984. The referee found that Linda's allegations were not substantiated and reinstated Larry's visitation privileges. Concerned about Linda's marriage, the referee also ordered that the child not be left alone with Kerry pending resolution of Larry's change of custody motion.

The hearing on the change of custody motion began in August 1984 and continued over several months, concluding with the referee issuing findings of fact and conclusions of law in November 1984, recommending that custody be changed from Linda to Larry. Linda requested district court review of the referee's recommendations. A review hearing scheduled for late February 1985 was postponed for several weeks when Linda retained new counsel.

Meanwhile, between January 26, 1985, and March 22, 1985, Linda took her daughter for six sessions with Carl Marquit, a Minneapolis social worker and psychologist who specialized in family and child sexual abuse. The February 22 and 23 sessions were videotaped. Based on these sessions, Marquit formed the opinion that the child had probably been sexually abused by Larry. Linda then moved to restore custody to her (despite the fact that the district court had not yet confirmed the referee's recommendation to change custody from Linda to Larry), to restrict Larry's visitation, to require Larry to submit to a "mental examination" by Marquit, and to require Larry to pay for Marquit's expert witness fees. The child was placed in temporary foster care on March 5, 1985, pending resolution of the custody hearing.

On March 29, the district court held a hearing on Linda's motions. Testimony was presented by Linda's expert, Carl Marquit, and by Larry's three expert witnesses, who countered Marquit's testimony and the videotape evidence as being inconclusive and as equally explainable by possibilities other than sexual abuse. At the conclusion of the hearing on April 2, the court ruled from the bench and confirmed the referee's findings of fact and conclusions of law, specifically referring to Rule 53(f)(2), N.D.R.Civ.P., that when a master is appointed to hear a matter, the court must accept the master's findings of fact unless they are clearly erroneous. The court also denied Linda's other motions, confirming in a written order on April 10 that Larry was to have custody and that Larry did not have to submit to an examination by Marquit.

▪ Linda asserts that the trial court abused its discretion in denying her motion to have Larry examined by Carl Marquit. Rule 35(a) of the North Dakota Rules of Civil Procedure states:

"When the mental or physical condition (including the blood group) of a party, or a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending *may* order the party to submit to a physical or mental examination *by a physician* or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." (Emphasis supplied.)

Marquit was not a physician, had not completed his dissertation for his doctorate in psychology, and was not a licensed clinical psychologist. Therefore, Linda conceded at oral argument that the trial court did not abuse its discretion under Rule 35(a), N.D.R.Civ.P., but argued that the request for a "mental evaluation" should still have

been allowed under the spirit of the general discovery rule, Rule 26. A trial court has wide discretion in deciding whether to grant or deny discovery requests, including those for a physical or mental examination under Rule 35. *Lucke v. Lucke,* 300 N.W.2d 231, 235 (N.D.1980). We find no abuse of discretion in denying this request.

There is some question about which standard of review applies to the trial court's denial of Linda's motion to modify custody. The court treated the motion as a Rule 60(b), N.D.R.Civ.P., motion requesting relief on the basis of newly discovered evidence that could not have been discovered by due diligence within the time limits to move for a new trial under Rule 59(b). The court granted the new hearing and allowed Linda to present evidence to support her change of custody motion. The "newly discovered evidence" was Marquit's testimony that the child was not able to articulate the sexual abuse her father allegedly committed when she was approximately two years old, but had matured enough by age four and a half to communicate the incidents through the sessions with Marquit.

The motion to require Larry to submit to an examination by Marquit is tied to the 60(b) "newly discovered evidence" issue because Marquit maintained that he needed to interview Larry to more clearly establish that Larry was the probable source of abuse and to adequately support Linda's position that a change in custody from Larry to Linda was in the child's best interests. Since the standard of review for Rule 60(b) motions, as well as for discovery motions, is abuse of discretion, we also conclude that there was no abuse of discretion in denying the request as part of the Rule 60(b) "newly discovered evidence" motion.

▪ Since the trial court treated Linda's motion to restore custody to her as a 60(b) motion, is the applicable standard of review an abuse of discretion, rather than the clearly erroneous standard normally applicable to custody issues? The trial court, when considering a request to modify a

custody award, must determine if there has been a significant change of circumstances such that it is in the child's best interests to change custody. The party seeking modification has the burden of showing the requisite change of circumstances. *Pitsenbarger v. Pitsenbarger,* 382 N.W.2d 662, 665 (N.D.1986). On appeal, we will not set aside a trial court's determination on a motion for change of custody unless it is clearly erroneous. Rule 52(a), N.D.R. Civ.P.; *Olson v. Olson,* 361 N.W.2d 249, 251 (N.D.1985). We conclude that the clearly erroneous standard applies to our review of the custody determination in this case.

Relying on our opinion in *Dolajak v. State Automobile & Casualty Underwriters,* 252 N.W.2d 180 (N.D.1977), Linda claims that the videotaped sessions constitute nondemeanor or documentary evidence which this court is free to evaluate for itself on appeal. Linda asserts that even if the clearly erroneous standard applies, after viewing the videotape this court should be left with a definite and firm conviction that a mistake has been made.

Linda's reliance on *Dolajak* is misplaced. The evidence in *Dolajak* was strictly documentary and we stated that "this court is as capable of reading and understanding the documentary evidence as is the trial court, ... We further believe that the question here is more a question of law than a question of finding of fact." *Dolajak,* 252 N.W.2d at 182. Regardless of whether or not the videotape is in fact documentary evidence in the same sense as a written document, Marquit testified at the hearing and other expert witnesses also presented testimony. Consequently this court does not have the same perspective of the evidence as the trial court had. Furthermore, we recently held that the clearly erroneous standard does apply to physical or documentary evidence and "prior decisions of this Court to the contrary are to be disregarded." *Stracka v. Peterson,* 377 N.W.2d 580, 582 (N.D.1985). See Explanatory Note to Rule 52(a), N.D.R.Civ.P.

The admissibility of, and weight to be given to, expert testimony in child sexual abuse cases vexes courts everywhere, today. Compare and consider the varying approaches reflected in these recent decisions: *Matter of X,* 110 Idaho 44, 714 P.2d 13 (1986); *State v. Myers,* 382 N.W.2d 91 (Iowa 1986). Similar concerns arise with regard to children's competency to testify. Compare *State v. Griffin,* 386 N.W.2d 529 (Iowa Ct.App.1986); *State v. Brotherton,* 384 N.W.2d 375 (Iowa 1986); *State v. Bellotti,* 383 N.W.2d 308 (Minn.Ct.App.1986); *State v. Bawdon,* 386 N.W.2d 484 (S.D. 1986).

The trial judge in this case was able to evaluate firsthand the credibility of the expert witnesses for both parties. In making his oral findings, which were later summarized in his written order, he specifically referred to the videotape of Marquit's sessions with the child, the transcripts from the hearing before the referee and other documents in the record. He noted the child's inconsistencies in the stories of what her mother did and contrasted that with the lack of variance in stories of what her father did. As for Marquit's screening test, the court observed that it was a reliable device only to the extent that Linda supplied correct information. Marquit himself, in the videotaped interview, told the child that she didn't make sense when she said her daddy cut a big hole in her clothes with a scissors before he stuck a stick in her butt. Based on all the evidence before him, and relying on his own experiences in court, the trial court concluded:

"I'm of the opinion that this child has been coached and as far as I can ascertain she must have been coached by her mother ... over ... an extended period of time .... if the Court is going to assume anything, or infer anything, which it is allowed to do from evidence, it has to infer that this child had been coached in those respects and that that type of coaching may well have extended into—because of the particular type of vindictiveness and motivation demonstrated there—the video interviews."

The trial court observed the witnesses in addition to viewing the videotape. We have seen the videotape in its entirety and carefully reviewed the record and transcripts. After doing so we are unable to say that the findings of the trial judge were clearly erroneous in concluding that Linda failed to meet her burden of proving a sufficient change in circumstances to render it in the daughter's best interests to change custody from Larry back to Linda.

The trial court, as well as the referee, had to make a difficult choice between having the child live with her mother, who was married to a convicted child sexual abuser, or with her father, who had been accused of unsubstantiated abuse. The referee's findings, which the trial court accepted, and which Linda has not challenged on appeal to this court, specifically state that the child's "home environment while living with the Plaintiff, since the parties' Divorce, has not been stable nor satisfactory, due in large, to the relationship between Plaintiff and Kerry Walters."

We have said before that fitness of the parents is not the test for custody awards in this State; nor is fairness to the parents. The test is the best interest of the child and when that test is applied, "choice must necessarily be made between two or more possible but imperfect dispositions." *Odegard v. Odegard,* 259 N.W.2d 484, 486 (N.D.1977). The trial court carefully considered the evidence and testimony presented, determined that Linda had failed to prove that Larry had sexually abused his daughter and that it was in the child's best interest to award custody to Larry. We affirm.

At oral argument Larry asserted that Linda's appeal was frivolous and requested attorney's fees and costs pursuant to Rule 38, N.D.R.App.P. We cannot say that Linda's appeal was frivolous or without merit.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.