1999 ND 37

**Diane HENDRICKSON, Plaintiff, Appellant and Cross-Appellee,**

v.

**Mark HENDRICKSON, Defendant, Appellee and Cross-Appellant.**

**Civil No. 980124**

Supreme Court of North Dakota.

Feb. 25, 1999.

Robert W. Martin, Bismarck, for plaintiff, appellant and cross-appellee.

William A. Herauf, Reichert & Herauf, P.C., Dickinson, for defendant, appellee and cross-appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Diane Hendrickson appealed and Mark Hendrickson cross-appealed from an order directing the clerk of court place Mark Hendrickson's monthly child support payments into an interest-bearing escrow account and awarding him attorney fees. We affirm in part, reverse in part and remand.

[¶ 2] This case was previously before us on related legal issues. *See Hendrickson v. Hendrickson*, 553 N.W.2d 215 (N.D.1996). Diane and Mark Hendrickson divorced in 1995. Diane Hendrickson received custody of the parties' four children. Prior to the divorce judgment, the district court issued an order establishing a visitation schedule. The order stated Mark Hendrickson would have visitation on the second and fourth weekends of every month and at Christmas. Prior to the divorce, the district court also issued an order appointing Carla Howe Godfrey as guardian ad litem.

[¶ 3] February 7, 1996, Mark Hendrickson brought a motion claiming Diane Hendrickson was frustrating visitation. In an affidavit, he detailed several examples of Diane Hendrickson's interference with visitation including: leaving her home with the children at the time of scheduled visitations, not al-

lowing him to take the children once he arrived for visitation and refusing to discuss or arrange visitation. After a hearing, an order setting visitation for the first weekend of each month was issued December 4, 1996. Mark Hendrickson exercised visitation December 13 and 14, 1996, but he did not see the children during January or February 1997. February 25, 1997, he brought a motion for order of contempt on the grounds Diane Hendrickson was interfering with visitation.

[¶ 4] Three months later, the district court appointed Karen Mueller as guardian ad litem. October 1, 1997, Mark Hendrickson brought a motion to change custody. He asserted Diane Hendrickson had alienated the children and obstructed his attempts to exercise visitation. Following a hearing, the district court issued an order directing care, custody and control of the four children be given to Stutsman County Social Services and authorized the agency to remove the children from Diane Hendrickson's care if any alienating behavior continued. The district court's order relied heavily upon the child custody evaluation report of Mueller which concluded Diane's alienation was through both overt and covert patterns of behavior. The order further read:

> If there were any practical way under these circumstances, I would award custody to Mark. Before that happens, Diane has an opportunity to undo what she has done. To that end, from Stutsman County Social Services I will receive a report in ninety days. If that report reveals that Diane has engaged in *any* alienating behavior, Diane will forthwith commence serving thirty days in the Southwest Multi–County Corrections Center for contempt. If that report reveals that either party has not fully cooperated in the therapeutic process or has hindered it in any way, that party will serve thirty days. If the report reveals no improvement in the relationship between children and father, I will take it as *prima facie* evidence that Diane continues subtle alienating behavior and instruct the sheriff accordingly.

Stutsman County Social Services declined custody and a second order was issued by the district court stating, "[t]his is the most outrageous case that I have seen since I began law school twenty-five years ago. Diane's continuing pattern of alienating behavior has pretty much destroyed Mark's hope of a meaningful relationship with his children." The order provided:

> I would order Diane to report to jail which she richly deserves if I could do so without harming the children. But in jail, Diane would probably lose her job, house and car all of which Diane may deserve but the children do not. Moreover, with the currently existing relationship between Mark and his children, I don't see how I can now give Mark custody whether nor [sic] not Diane goes to jail. Diane has poisoned their relationship with their father so badly that a change of custody to Mark is kind of out of the question right now.

Attempting to remedy the visitation problems, the district court directed the clerk of court place Mark Hendrickson's monthly child support payments in an interest-bearing escrow account for the benefit of the childrens' higher education and explained the issue might be revisited when Diane Hendrickson has persuaded the children of the importance of a relationship with their father. Diane Hendrickson was also ordered to pay $2,000 in attorney fees.

[¶ 5] On appeal, Diane Hendrickson challenges the placement of the child support payments into a separate account and award of attorney fees and Mark Hendrickson, on his cross-appeal, asserts the court should have awarded him custody.

### Child Support Payments

[¶ 6] A trial court's determination on a motion to modify custody is subject on appeal to the clearly erroneous standard under Rule 52(a), N.D.R.Civ.P. *Johnson v. Johnson*, 480 N.W.2d 433, 435 (N.D.1992). Therefore, the trial court's findings will not be set aside unless they are clearly erroneous. *Id.*

[¶ 7] Visitation between a child and a noncustodial parent is presumed to be in the best interests of the child. *Blotske v.*

*Leidholm,* 487 N.W.2d 607, 610 (N.D.1992). Not only is visitation a privilege of the non-custodial parent, but it is also the right of the child. *Id.* This Court has recognized that regularly scheduled visitation is an integral part of developing a healthy relationship between a child and the noncustodial parent. *See, e.g., Iverson v. Iverson,* 535 N.W.2d 739, 742 (N.D.1995); *Johnson v. Schlotman,* 502 N.W.2d 831, 835 (N.D.1993). Therefore, a custodial parent should, in the best interests of the children, nurture the child's relationship with the noncustodial parent and has a duty to not turn a child away from the other parent by "poisoning the well." *See Johnson,* 502 N.W.2d at 834.

[¶ 8] The latest order of the trial court provided Mark Hendrickson would have visitation the first full weekend of each month. The record clearly reveals Diane Hendrickson frustrated his attempts to exercise visitation and alienated the children from him. The trial court obviously exasperated with the situation, refused to hold Diane Hendrickson in contempt for disregarding the court-ordered visitation and instead, concluded Mark Hendrickson's child support payments should be placed in a separate account to be used for the childrens' secondary education. While we understand the trial court's frustration, we conclude this remedy was improper and instruct the trial court to consider an alternative remedy.

[¶ 9] The child support guidelines contain no provisions authorizing current support be placed in a separate account when a custodial parent refuses to cooperate with visitation. Rather, under the guidelines, child support is to be paid to the custodial parent to use for the child's current expenses. *See Schleicher v. Schleicher,* 551 N.W.2d 766, 768 (N.D.1996) (holding trial court's order requiring obligor place $50 per month of his child support obligation into an annuity was clearly erroneous, but not discussing child support with respect to visitation); N.D. Admin. Code § 75–02–04.1–02(1).

[¶ 10] In *Schleicher* we stated, "[w]e can envision compelling circumstances where it may be in the child's best interests to set aside a portion of child support payments for future expenses," however, a trial court must articulate compelling circumstances demonstrating the child's best interests require payment for future expenses. *See Schleicher,* 551 N.W.2d at 769. It is apparent from *Schleicher* and the cases cited therein that child support is presumed to benefit the children not the custodial parent and should not be used as a wedge or a club to force compliance with the court's orders.

[¶ 11] In the present case, the trial court made no findings on whether it was in the childrens' best interests to place the money into an account for their future use. Furthermore, no findings were made as to whether the childrens' current expenses can be met without the monthly support payments.

[¶ 12] There are alternative remedies available to encourage Diane Hendrickson to follow the court's orders regarding visitation. The trial court could find her in contempt and impose a jail sentence. Although the court expressed concern the children would suffer if Diane Hendrickson was sent to jail because she would likely lose her job, house and car, the sentence could, for example, be served at a time when it would not interfere with her work schedule. During this time, Mark Hendrickson could exercise visitation and begin repairing his relationship with the children.

### Change of Custody

[¶ 13] Because of Diane Hendrickson's attempts to frustrate visitation and alienate the children from their father, Mark Hendrickson insists he should have custody of the children. When a party, such as Mark Hendrickson, seeks to modify a custody arrangement, the trial court applies a two-step analysis. *Mosbrucker v. Mosbrucker,* 1997 ND 72, ¶ 6, 562 N.W.2d 390. A trial court must determine: 1) whether there has been a significant change in circumstances following a divorce and custody determination; and 2) whether the change of circumstances effect the child in such an adverse way that it requires a change in the existing custody arrangement to further the best interests of the child. *Id.* Evidence of alienation or per-

sistent frustration can be relevant factors in answering the first part of this test. *See, e.g., Loll v. Loll,* 1997 ND 51, ¶ 16, 561 N.W.2d 625 (citing *Van Dyke v. Van Dyke,* 538 N.W.2d 197, 201 (N.D.1995)) (stating alienation and frustration can be relevant factors in a change of custody action to determine whether a material change of circumstances exists). Although, we recognize methods other than a change of custody should be used initially to remedy a parent's misbehavior, *id.,* we also recognize that, after exhausting other remedies, a change in custody may be the only method to correct the damage of a particularly stubborn and defiant custodial parent. If the alternative remedies fail, the district court should consider a change of custody. *Cf. McAdams v. McAdams,* 530 N.W.2d 647, 650 (N.D.1995) (holding "a parent who willfully alienates a child from the other parent may not be awarded custody based on that alienation").

### *Attorney Fees*

▬ [¶ 14] The district court's order directed Diane Hendrickson pay $2,000 in attorney fees. We will not overturn an award of attorney fees on appeal unless the appellant affirmatively establishes the trial court abused its discretion. *See Larson v. Larson,* 1998 ND 156, ¶ 17, 582 N.W.2d 657.

▬ Section 14-09-24, N.D.C.C. provides:

In any proceeding where child visitation is properly in dispute between the parents of a minor child, the court shall award the noncustodial parent reasonable attorney's fees and costs if the court determines there has been willful and persistent denial of visitation rights by the custodial parent with respect to the minor child.

The district court characterized Diane Hendrickson's alienating and interfering behavior as "outrageous" and determined her conduct was the direct cause of the visitation problems. These findings are fully supported by the record. We, therefore, conclude the trial court's award of attorney fees was not an abuse of discretion.

[¶ 15] We affirm the trial court's award of attorney fees, reverse the portion of the or-der directing the clerk of court place the child support payments into a separate account and remand for further proceedings consistent with this opinion.

[¶ 16] SANDSTROM, NEUMANN and MARING, JJ., and BENNY A. GRAFF, D.J., concur.

[¶ 17] BENNY A. GRAFF, D.J., sitting in place of KAPSNER, J., disqualified.