2001 ND 13

**Rosemary J. HURT, Plaintiff and Appellee,**

v.

**Raymond J. HURT, Defendant and Appellant.**

**No. 20000177.**

Supreme Court of North Dakota.

Jan. 30, 2001.

---

Eugene F. Buresh, Ficek & Buresh, P.C., Dickinson, ND, for defendant and appellant.

Robert A. Keogh, Keogh Law Office, Dickinson, ND, for plaintiff and appellee.

MARING, Justice.

[¶ 1] Raymond Hurt appeals from a divorce judgment awarding custody of the parties' two children to Rosemary Hurt. We affirm.

I

[¶ 2] Raymond and Rosemary Hurt were married December 28, 1990. At the time of the marriage, Rosemary had six children, five of whom were from a previous marriage. Rosemary's sixth child, Timothy, was from a previous relationship. Following the parties' marriage, Raymond adopted Timothy, and subsequently, the couple had a child of their own.

[¶ 3] In February 1998, Raymond allegedly committed an act of physical abuse. As a result of the incident, Rosemary obtained a temporary adult abuse protection order on February 20, 1998, and an adult abuse protection order on March 6, 1998. After the incident occurred, Rosemary and the parties' two children moved into a domestic violence shelter where they remained until April of 1998. In October 1998, Raymond allegedly committed a second act of physical abuse, and on October 12, 1998, Rosemary obtained a temporary domestic violence protection order. On October 28, 1998, Rosemary obtained a domestic violence protection order, and the order remained in effect until February 11, 1999. Following the second incident of physical abuse, Rosemary and the children once again moved into the domestic violence shelter where they remained until February 11, 1999.

[¶ 4] Shortly after moving out of the domestic abuse shelter, Rosemary sued for divorce. The trial court granted Raymond interim custody of the parties' children. The court appointed a guardian ad litem to provide a custody evaluation. The guardian ad litem recommended awarding custody of the children to Raymond.

[¶ 5] A trial was held on February 10 and 11, 2000. On April 20, 2000, a judgment was entered awarding physical custody of the parties' children to Rosemary and granting Raymond liberal visitation. In its findings of fact, the trial court found both parents had exhibited some of the worst parenting it had ever seen. The court further found that Rosemary and Raymond were unable to communicate regarding visitation. Specifically, it stated "Rosemary has refused to talk with Raymond and when [the parties] do speak Raymond does not stick to the topic of parenting." On June 14, 2000, Raymond filed his Notice of Appeal.

## II

[¶ 6] Raymond contends the trial court erred in awarding physical custody of the parties' two children to Rosemary. In *Reeves v. Chepulis*, 1999 ND 63, ¶ 8, 591 N.W.2d 791 (citation omitted), our Court reiterated the standard of review of a trial court's custody award under N.D.R.Civ.P., 52(a):

> A trial court's custody determination is a finding of fact that will not be set aside on appeal unless it is clearly erroneous. A trial court's findings of fact are presumptively correct. The complaining party bears the burden of demonstrating on appeal that a finding of fact is clearly erroneous. In reviewing findings of fact, we must view the evidence in the light most favorable to the findings. A choice between two permissible views of the evidence is not clearly erroneous. Simply because we might view the evidence differently does not entitle us to reverse the trial court. A finding of fact is clearly erroneous only if the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.

[¶ 7] In determining an initial custody award, a trial court must consider the best interests and welfare of the child. *Schumacher v. Schumacher*, 1999 ND 149, ¶ 16, 598 N.W.2d 131. The trial court applied the best interests of the child factors under N.D.C.C. § 14–09–06.2(1) and made findings as to each factor. Several factors favored neither Raymond nor Rosemary. The court found both parties have love and affection for their children, there exist emotional bonds between the children and each parent, and both parents have the disposition to give their children love and affection. The court further found both parents are morally fit. The court finally stated the children expressed no preference as to which parent they live with.

[¶ 8] Raymond argues the trial court's findings of fact are inconsistent because it concluded he was better able to continue the education of the children, but that Timothy's school record with Rosemary was more favorable. The fact, however, that one factor favors one party and another factor favors the other party does not necessarily indicate the court's findings of fact are inconsistent. These two factors do not consider identical interests. One factor considers the disposition to continue education and the other factor considers the actual school record of the children. The court found Raymond had a greater disposition to continue the children's education because Raymond demonstrated a willingness to work with the school and Rosemary failed to take appropriate steps to get involved with the children's education after Raymond was awarded interim custody. However, it found the parties' oldest child, Timothy, had a poor school record while living with Raymond. Timothy's grades declined during the interim custody order, and his principal at school described him as having above average ability with below average performance. Alternatively, when Timothy lived with Rosemary at the domestic abuse shelter he did well in school and enrolled in a school basketball program. After considering all of the evidence, we are not convinced the trial court made inconsistent findings.

[¶ 9] Raymond complains the trial court erroneously concluded Rosemary has a greater disposition to provide the children with medical care. He states this factor should favor neither party. The trial court found "the evidence indicates that Timothy would appear to be in need of and probably benefit from a psychological evaluation and appropriate follow up treatment." Raymond argues the trial court was speculating as to Timothy's possible psychological problems. Timothy's performance at school and the guardian ad litem's testimony, however, suggest Timothy is indeed in need of psychological treatment. Rosemary indicated she was in favor of seeking psychological treatment for Timothy, and the court concluded Rosemary is more inclined to assist Timothy with any such psychological treatment. Raymond, however, believed it was not necessary for Timothy to seek counseling, but stated he would support psychological treatment if ordered to do so. The court concluded Raymond lacked concern regarding Timothy's psychological problems and, therefore, correctly concluded Rosemary was better able to provide Timothy with any medical treatment. On this record, we cannot say the trial court erred in determining Rosemary had a greater disposition to provide the children with medical care.

[¶ 10] Raymond next contends the trial court erroneously determined domestic violence occurred during the marriage. Specifically, he states no credible evidence was introduced at trial that indicated he physically abused Rosemary. The evidence of domestic violence presented to the trial court did not trigger the rebuttable presumption under N.D.C.C. § 14–09–06.2(1)(j). Evidence of domestic violence which does not trigger the presumption, nonetheless, remains one of the best interest factors to be considered by the trial court. *Schumacher*, 1999 ND 149, ¶ 17, 598 N.W.2d 131; *Reeves*, 1999 ND 63, ¶ 15, 591 N.W.2d 791. In its findings of fact, the trial court recited two incidents of domestic violence committed by Raymond. Rosemary obtained two adult protection orders as a result of these incidents. *See* N.D.C.C. 14–09–06.2(1)(j) (stating "[a] court may consider, but is not bound by, a finding of domestic violence in another proceeding"). Moreover, Raymond wrote Rosemary a letter, whereby he apologized for his actions during one of the two incidents. In light of such evidence, we are convinced the court was presented with evidence from which it could find domestic violence.

[¶ 11] Raymond argues the court did not give adequate consideration to Rosemary's bad behavior, including her going to Timothy's school and refusing to leave after she was asked to do so by school personnel. The court made detailed findings regarding Rosemary's behavior. It stated:

Rosemary has … exhibited out of control behavior that does not set a good example for the children. This behavior includes frightening the guardian ad litem, frightening Dr. Cope's secretary, frightening a social worker in Dunn County, and frightening a secretary at Hagen Junior High. Rosemary's anger and loss of control are somewhat understandable because reportedly Raymond could "drive any normal person crazy." But Rosemary has gone beyond what could be expected even given Raymond's behavior. Rosemary was arrested and convicted of "criminal trespass." Rosemary seemed to show a lack of respect for court orders which simply can[n]ot be condoned.

Rosemary seems to show a lack of concern about the importance of a father-son relationship between Raymond and the boys. Rosemary has vented her anger with Raymond in front of the boys and blamed Raymond in front of the boys when things go wrong.

[¶ 12] The court made findings regarding Raymond's behavior as well. It stated:

Raymond has also exhibited behavior that does not support awarding the custody of the boys to him. This behavior

includes a lack of concern for Rosemary and the importance of a mother-son relationship between Rosemary and the boys.

The prime example is the fiasco over [the wedding of Rosemary's daughter] all because Raymond would not consent to an exchange of visitation. It appears to this Court that Raymond was more interested in controlling the situation than he was in doing what was best for the boys.

[¶ 13] The court minimized the effect of Rosemary's bad behavior because it found she had begun to make positive changes in her life. She had obtained employment outside the home, was doing well in her job, and was involved with group and individual counseling. The court concluded Rosemary was more committed to making positive changes in her life than was Raymond. After having reviewed the entire record, we are not convinced the court did not adequately consider Rosemary's behavior.

[¶ 14] Although Rosemary has made recent improvements in her life, we are nevertheless concerned about the evidence of her reluctance to promote visitation with the non-custodial parent, Raymond. We have recognized visitation between a child and a non-custodial parent is presumed to be in the best interests of the child and that it is not merely a privilege of the non-custodial parent, but a right of the child. *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 21, 603 N.W.2d 896. Rosemary has a duty not to turn her children away from Raymond by "poisoning the well." *Hendrickson v. Hendrickson*, 1999 ND 37, ¶ 7, 590 N.W.2d 220. Rather, regardless of her perceived imperfections in the other parent, Rosemary should, in the best interests of the children, nurture the children's relationship with the non-custodial parent, Raymond. *Id.* We have stated when persistent frustration of visitation works against the children's best interest, a change in custody may be justified.

*Hendrickson,* 2000 ND 1, ¶ 18, 603 N.W.2d 896.

[¶ 15] Raymond finally contends the trial court should have given greater consideration to the guardian ad litem's opinion, which recommended awarding custody of the children to Raymond. Although it is appropriate to consider the opinion of the guardian ad litem in determining custody, it is within the trial court's discretion to assign the weight given to such evidence. *Kjelland v. Kjelland,* 2000 ND 86, ¶ 13, 609 N.W.2d 100. The court is not required to, nor should it, regard a guardian ad litem's testimony and recommendation as conclusive. *Schmaltz v. Schmaltz,* 1998 ND 212, ¶ 9, 586 N.W.2d 852 (citing *Schneider v. Livingston,* 543 N.W.2d 228, 233 (N.D.1996)). The guardian ad litem's report indicated both parties have difficulty controlling their anger. She further indicated domestic abuse occurred during the marriage, but that she was not certain who committed what acts. The guardian ad litem's explanation for her decision appears to rest on her belief that Raymond has "demonstrated a willingness to work with the school." Apparently, the trial court concluded the guardian ad litem's recommendation was unpersuasive. We are not convinced the court failed to adequately consider the opinion of the guardian ad litem simply because it did not follow her recommendation or that it erred in exercising its judgment.

[¶ 16] A choice between two permissible views of the evidence is not clearly erroneous, and simply because we might have viewed the evidence differently does not entitle us to reverse the trial court decision. *Reeves,* 1999 ND 63, ¶ 8, 591 N.W.2d 791. The court acknowledged it was faced with a difficult decision in determining which parent should be awarded custody. Upon our review of the record, we are not left with a definite and firm conviction the trial court made a mistake in its award of

custody. Accordingly, the judgment is affirmed.

[¶ 17] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concurs.