2006 ND 236

**Kyleigh KLEIN, Plaintiff and Appellee,**

v.

**Dustin LARSON, Defendant
and Appellant.**

**No. 20060062.**

Supreme Court of North Dakota.

Nov. 28, 2006.

Maury C. Thompson, Bismarck, N.D., for plaintiff and appellee; submitted on brief.

Richard B. Baer, P.C., Bismarck, N.D., for defendant and appellant; submitted on brief.

SANDSTROM, Justice.

[¶ 1] Dustin Larson appeals from a district court judgment awarding custody of the parties' minor child, C.K., to Kyleigh Klein and ordering Larson to pay child support. We reverse and remand, concluding the district court's finding that it was in the child's best interests to award custody to Klein is clearly erroneous.

I

[¶ 2] In April 2002, Larson and Klein engaged in a one-time sexual encounter. At the time, Larson was 20 years old and Klein was 16 years old. Klein became pregnant, and C.K. was born in December 2002. Klein did not contact Larson to advise him of her pregnancy or C.K.'s birth. Larson first learned of the child and that he might be the father when Klein's sister called him in the spring of 2003 and told him C.K. was in the hospital.

[¶ 3] In September 2004, the Morton County Social Service Board brought this action against Larson to recover payments that had been made on behalf of C.K. Genetic testing established that Larson was C.K.'s biological father, and judgment was entered ordering Larson to pay child support. In January 2005, following the determination of paternity, Larson began having custody of C.K. for extended periods of time. Larson and Klein essentially shared custody, with Larson having C.K. a majority of the time over the ensuing months.

[¶ 4] In June 2005, Larson brought a motion for custody and an application for an interim order granting him temporary custody during the pendency of the action. The district court entered an interim order awarding Larson temporary custody of C.K. Following an evidentiary hearing, the district court found it was in the best interests of the child to award custody to Klein, with ample visitation to Larson.

Larson was also ordered to pay child support. Larson appealed, alleging the district court erred in awarding custody of C.K. to Klein.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

II

[¶ 6] A trial court's decisions on child custody, including the ultimate award of custody, are treated as findings of fact and will not be set aside on appeal unless they are clearly erroneous. *Gietzen v. Gabel,* 2006 ND 153, ¶ 6, 718 N.W.2d 552; *L.C.V. v. D.E.G.,* 2005 ND 180, ¶ 3, 705 N.W.2d 257; *In re Griffey,* 2002 ND 160, ¶ 5, 652 N.W.2d 351. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made. *Gietzen,* at ¶ 6; *Griffey,* at ¶ 5; *Peek v. Berning,* 2001 ND 34, ¶ 4, 622 N.W.2d 186.

[¶ 7] In an initial custody decision, the trial court must award custody of the child to the person who will better promote the best interests and welfare of the child. N.D.C.C. § 14–09–06.1; *Gietzen,* 2006 ND 153, ¶ 7, 718 N.W.2d 552; *L.C.V.,* 2005 ND 180, ¶ 3, 705 N.W.2d 257. Neither the fitness of the parents nor fairness to the parents is the appropriate test for determining custody, but rather the predominant consideration is the best interests of the child. *Guskjolen v. Guskjolen,* 391 N.W.2d 639, 643 (N.D.1986); *Ebertz v. Ebertz,* 338 N.W.2d 651, 655 (N.D.1983). In determining the best interests and welfare of the child, the court is required to apply

the factors set out in N.D.C.C. § 14–09–06.2(1). *L.C.V.,* at ¶ 3; *Griffey,* 2002 ND 160, ¶ 5, 652 N.W.2d 351. Section 14–09–06.2(1), N.D.C.C., provides in relevant part:

1. For the purpose of custody, the best interests and welfare of the child is determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:

a. The love, affection, and other emotional ties existing between the parents and child.

b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

g. The mental and physical health of the parents.

h. The home, school, and community record of the child.

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j. Evidence of domestic violence. In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence....

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests....

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular child custody dispute.

In assessing the relevant factors and determining custody, there is no presumption "[b]etween the mother and father ... as to who will better promote the best interests and welfare of the child." N.D.C.C. § 14–09–06.1; *see also McDowell v. McDowell,* 2003 ND 174, ¶ 19, 670 N.W.2d 876 (the "tender-years doctrine" has been repealed and there is to be no gender bias in custody decisions); *Kasprowicz v. Kasprowicz,* 1998 ND 68, ¶ 14, 575 N.W.2d 921 (same).

### III

[¶ 8] In its Memorandum Opinion, Findings of Fact, Conclusions of Law, and Order for Judgment, the district court considered and addressed each of the factors enumerated in N.D.C.C. § 14–09–06.2(1). The court found factor d (stable environment and continuity), factor f (moral fitness), and factor m (other relevant factors) favored Klein; factor e (permanence of custodial home) favored Larson; and the remaining factors favored neither party. On the basis of this assessment of the relevant factors, the court awarded custody of C.K. to Klein. Larson challenges numerous findings of fact and contends the district court misapplied the law.

## A

[¶ 9] Subsection (1)(d) of N.D.C.C. § 14–09–06.2 requires the court to consider the "length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity." The district court found this factor favored Klein, stating:

Until paternity was established somewhat more than two years after [C.K.'s] birth, [C.K.] lived with Klein who was solely responsible for his care. Larson asserts that Klein moved a lot and had different living arrangements, and by implication he claims [C.K.] has lived in a more stable environment with him arguably since January 11, 2005, and clearly since the date of the Ex Parte Interim Order on June 9, 2005. No evidence was presented, however, that [C.K.] has been adversely affected by his living and home arrangements with Klein. In terms of maintaining continuity, based on the length of time calculated by Larson that [C.K.] has lived with one party or the other, as of January 26, 2006, [C.K.] having lived with Klein for 887 days has had more continuity with Klein than he has had with Larson for 245 days. This factor favors Klein.

[¶ 10] Factor (d) requires consideration of the stability and quality of the child's past environment:

Essentially, factor d addresses past stability of environment, including a consideration of place or physical setting, as well as a consideration of the prior family unit and its lifestyle as part of that setting. It also addresses the quality of that past environment, and the desirability of maintaining continuity. Under factor d, prior custody is a factor to be considered when determining the custodial arrangement which is best for the child.

*Shaw v. Shaw*, 2002 ND 114, ¶ 7, 646 N.W.2d 693 (quoting *Stoppler v. Stoppler*, 2001 ND 148, ¶ 9, 633 N.W.2d 142); *see also Schmidt v. Schmidt*, 2003 ND 55, ¶ 12, 660 N.W.2d 196. This Court has noted some of the factors that undermine stability in the home:

The stability of a child's home can be undermined in various ways. This might include frequent moves to unfamiliar settings, a succession of persons residing in the home, live-in romantic companions for the custodial parent, or other potential disruptions.

*Stoppler*, at ¶ 9 (quoting *Ireland v. Smith*, 451 Mich. 457, 547 N.W.2d 686, 690 n. 9 (1996)). A parent's frequent moving and inability to maintain steady employment are significant indicators of the parent's inability to provide a stable environment for the child. *See Stoppler*, at ¶ 9 n. 1; *In re D.F.G.*, 1999 ND 216, ¶ 16, 602 N.W.2d 697; *In re L.F.*, 1998 ND 129, ¶ 14, 580 N.W.2d 573.

[¶ 11] The evidence indicates Klein's living arrangements with C.K. in the past were anything but stable. The record demonstrates Klein moved at least six times, and possibly as many as ten times, between November 2003 and August 2005. She held a variety of jobs with differing work schedules. She and C.K. at various times lived with friends, with a boyfriend, and with a friend's family. At the time of the hearing, Klein lived in a two-bedroom apartment with a friend, and Klein and C.K. shared a bedroom when he stayed with her. By contrast, Larson provided a stable satisfactory environment for C.K. from January 2005 until the time of the hearing in January 2006. Larson is married, has a steady job, and owns a home where C.K. has his own room.

[¶ 12] While acknowledging Klein's frequent moves with C.K., the court dismissed this concern because there

was no evidence "that [C.K.] has been adversely affected by his living and home arrangements with Klein." The statutory factor does not require a showing of harm to the child before a parent's unstable lifestyle may be considered in awarding custody. By engrafting a "harm to the child" requirement onto the statutory factor, the court effectively treated this in the same manner as a motion to change custody, which would require a showing of an adverse impact on the child. This Court, however, has stressed the difference between the analysis employed in an initial custody proceeding and in a modification proceeding:

> A court's analysis in considering whether to modify custody differs from its analysis when awarding original custody. For a determination of an original custody award, only the best interests of the child are considered. But, when a party is seeking to modify a custody arrangement, a court applies a two step process. A trial court must determine: 1) Whether there has been a significant change of circumstances following the divorce and custody determination, and; 2) Whether the changes of circumstances effect [sic] the child in such an adverse way that it compels or requires a change in the existing custody arrangement to further the best interests of the child.

*In re K.M.G.*, 2000 ND 50, ¶ 4, 607 N.W.2d 248 (citations omitted) (quoting *Mosbrucker v. Mosbrucker*, 1997 ND 72, ¶ 6, 562 N.W.2d 390). Klein's ever-changing living arrangements were the antithesis of stability. The record indicates that every few months Klein moved to a new location with different roommates and changed jobs and work schedules frequently. The perpetual instability in Klein's living arrangements was a relevant factor in determining C.K.'s best interests, even if there was not a

showing of a specific adverse impact to C.K. in the past.

[¶ 13] The court justified its finding for Klein on this factor by totaling the number of days C.K. had been in the custody of the respective parties since birth. The court's analysis is too simplistic, and arises from a misapplication of the statute. In assessing the stability and continuity of the respective parties' home life, the court must offer deeper investigation and analysis than merely saying "mother had child for X number of days while father had child for only Y number of days." Proper consideration of factor (d) requires that the court assess the quality and stability of the child's past environment. *Schmidt*, 2003 ND 55, ¶ 12, 660 N.W.2d 196; *Shaw*, 2002 ND 114, ¶ 7, 646 N.W.2d 693; *Stoppler*, 2001 ND 148, ¶ 9, 633 N.W.2d 142. A purely statistical view of the number of days the respective parties had the child is not a sufficient indicator of which party's home will provide greater stability and continuity in the best interests of the child.

[¶ 14] The court's finding that factor (d) favored Klein appears to be influenced by an erroneous view of the law. Considering the issue under the appropriate view of the law, we are left with a definite and firm conviction a mistake has been made. The evidence in this record established Klein had not provided a stable satisfactory environment for C.K. in the past, and greater stability and continuity for C.K. would result by retaining the current placement of custody with Larson. Viewing the evidence in the record under a correct interpretation of the law, we conclude the trial court's finding that factor (d) favored Klein is clearly erroneous, and factor (d) either favored Larson or favored neither party.

## B

■ [¶ 15] Subsection (1)(f) of N.D.C.C. § 14–09–06.2 requires the court to consider the moral fitness of the parents. The district court found this factor favored Klein:

Larson challenges the moral fitness of Klein with testimony offered that she has associated with people who use methamphetamine, but no evidence was presented that Klein uses any kind of illegal drugs. Larson offered Exhibit S, which is a collection of criminal and traffic matters involving Klein. The first documents in the exhibit are for an Infraction NSF check charge, which as of yet has not been resolved. Other documents show Klein was found guilty of three Class B Misdemeanors of driving under suspension with offense dates of March 29, 2005, July 20, 2004 and March 22, 2004, and a Class B Misdemeanor of reckless driving with an offense date of January 22, 2004. And Klein was found guilty of a traffic offense of not having or using a child restraint device and for driving without having a drivers license present, with both traffic offenses dated July 20, 2004. Klein was also convicted of a Class B Misdemeanor of being a "minor in possession" with an offense date of January 9, 2004, and she had a traffic citation of following too close with an offense date of October 18, 2003. The reason the Court finds Exhibit S to be somewhat disingenuous is because Larson included in it seven records of charges that were DISMISSED and thus are not considered as part of the record Klein has. The Court finds none of these offenses involve moral turpitude. Larson, on the other hand, is hardly in a position to challenge Klein's moral fitness since when he had sex with her in April of 2002, he committed a Class A Misdemeanor of corruption of a minor in violation of NDCC 12.1–20–05 in that he was an adult less than 22 years old having sex with a minor fifteen years of age or older. That is a crime of moral turpitude. In terms of moral turpitude, this factor favors Klein.

■ [¶ 16] There are several fundamental problems with the district court's analysis. First, there is nothing in the statute suggesting a court, when assessing this factor, may consider only a parent's conduct constituting a crime of moral turpitude. The issue here is not whether Klein's conduct constituted crimes of moral turpitude, but whether her moral conduct might be detrimental to the best interests of the child. Even if Klein's multiple convictions do not rise to the level of moral turpitude, they certainly demonstrate a continuing flagrant disregard for the laws of society.

[¶ 17] Although the court believed it was "disingenuous" to include Klein's dismissed charges in the exhibit, the court was free to disregard the dismissed charges. Inclusion of this additional evidence does not change the fact that Klein had numerous criminal convictions while C.K. was in her custody. Of particular concern is her conviction for failing to use a child restraint device. This offense directly affected C.K., and demonstrates a failure to exercise proper care to ensure the health and safety of the child. The court also downplayed evidence that Klein regularly associated with people using methamphetamine, finding that Klein herself did not use illegal drugs. Klein's association with people using illegal drugs could affect the health and safety of C.K., and is relevant in determining Klein's moral fitness.

[¶ 18] In addition to downplaying Klein's lengthy criminal record and association with drug users, the district court based its finding that this factor favored

Klein on its determination that Larson "committed a Class A Misdemeanor of corruption of a minor" when he had sex with Klein. Although Larson was never charged or convicted of any crime, the district court effectively found him guilty of the crime without any real analysis of the evidence or the law.

[¶ 19] It is less than clear that Larson was guilty of any crime. Under N.D.C.C. § 12.1–20–01(2), there is an affirmative defense to the crime of corruption of a minor if the actor reasonably believed the victim to be an adult. The parties cite to conflicting testimony on this issue, with Larson alleging he believed Klein was an adult and Klein claiming Larson knew she was only 16. Furthermore, the corruption of a minor statute cited by the district court, N.D.C.C. § 12.1–20–05, would probably no longer apply to Larson's conduct at all. In 2005, the Legislature enacted N.D.C.C. § 12.1–20–01(3), which provides: "When criminality depends on the victim being a minor, the actor is guilty of an offense only if the actor is at least four years older than the minor." In this case, the record indicates Larson is three years and 360 days older than Klein. Thus, it is arguable Larson is not four years older than Klein and his conduct would not be a crime under the statute. Criminal statutes are to be strictly construed in favor of the defendant and against the government. *State v. Beciraj*, 2003 ND 173, ¶ 14, 671 N.W.2d 250. Furthermore, although N.D.C.C. § 12.1–20–01(3) was enacted after Larson's conduct occurred in 2002, this Court has recognized an exception to the general rule against applying statutes retroactively for ameliorating penal legislation. *See State v. Iverson*, 2006 ND 193, ¶¶ 6–7, 721 N.W.2d 396; *State v. Cummings*, 386 N.W.2d 468, 471–72 (N.D.1986).

[¶ 20] This is not to say, however, that the district court could not consider Larson's conduct in engaging in sex with Klein when she was a minor; that may well be evidence of his moral fitness. The district court, however, clearly treated this as the equivalent of a class A misdemeanor conviction of corruption of a minor, which it found to be a crime of moral turpitude. In reaching its conclusion on factor (f), the court engrafted a "moral turpitude" element onto the statutory factor and improperly considered Larson's conduct as amounting to a conviction of a crime of moral turpitude.

[¶ 21] Larson's conduct relied upon by the district court to support its finding that factor (f) favored Klein consisted of a single incident occurring before C.K. was born. There was no other evidence calling into question Larson's moral character. By contrast, Klein has a lengthy criminal record and continued to flaunt the law and associate with drug users after C.K. was born and while he was living with her. Klein's legal problems continued through the date of the child custody hearing, as evidenced by the fact there was an outstanding bench warrant for Klein's arrest, issued less than ten days earlier, for failing to appear on an NSF check charge.

[¶ 22] The trial court's finding was based on an erroneous view of the law, and on this record we are left with a definite and firm conviction a mistake has been made. Viewing the evidence in the record under a correct interpretation of the law, we conclude the trial court's finding that factor (f) favored Klein is clearly erroneous, and factor (f) either favored Larson or favored neither party.

C

[¶ 23] Subsection (1)(m) of N.D.C.C. § 14–09–06.2 allows the court to consider "[a]ny other factors considered by the court to be relevant to a particular child custody dispute." The trial court ex-

plained its reasoning for finding this factor favored Klein:

> The Court is troubled by the posture of this case. Until Larson's paternity was established in a Stipulation for Entry of Judgment signed by Larson on January 20, 2005, Klein was in fact and in law the only parent of [C.K.], and was thus his legal custodial parent. The Court believes Larson's motion should have been for a change of custody and that it should have proceeded under the provisions of NDCC 14–09–06.6 and not through an Ex Parte Interim Order and Interim Order under NDROC Rule 8.2 so Klein's custody of [C.K.] would have been properly acknowledged.

> The Court recognizes Klein was only a very young 17 years old when she gave birth to [C.K.] without any long-term support system to help her with the very big task of being a mother without any experience and with very little help. Certainly things would arguably have been better for Klein *IF* Larson had been there from the beginning providing child support and assisting in providing for the care of [C.K.]. But he wasn't and that is not to his credit, while the Court does credit Klein for meeting these challenges and raising [C.K.] to the status of a healthy, happy, active two-year-old boy by herself before paternity was established.

> It is not surprising to the Court that once paternity was established, Klein would want to share [C.K.] with Larson, both in terms of visitation and child care. Thus the Court finds no detriment in Klein relying on Larson and his family to help care for [C.K.] The Court does find Klein is inexperienced and unsophisticated in dealing with the legal challenges presented to her through the Interim Order process. Thus the Court does not find any negative conduct on the part of Klein in her acquiescence

during the Interim Order process. The Court is also concerned about the exchange that took place between Klein's mother and Larson over the telephone, the transcript of which is in evidence as Exhibit V. When she came back to Bismarck for a visit, she was informed Larson would not let Klein have [C.K.] during the days of interim custody set for him in the Interim Order. Such a refusal strikes the Court as unreasonable and lacking in compassion. It seems unusual that not even a brief visit could be permitted. The audio tape from which that transcript was prepared was played in court. While the tone of Klein's mother was sharp and aggressive, and her language was crude, what she said about the relationship of Larson with Klein when [C.K.] was conceived is true. That's exactly what he did as a 20–year–old man to a 16–year–old girl. The Court finds the considerations in this factor favor Klein.

[¶ 24]   The court stressed two issues in finding this factor favored Klein: (1) Klein was C.K.'s "legal custodial parent" and this should have been treated as a motion for change of custody, giving Klein greater credit for having C.K.'s custody after his birth; and (2) On one occasion, Larson did not grant additional visitation beyond that specified in the interim order when Klein's mother came to town.

■  [¶ 25]   The court's suggestion that Klein was C.K.'s legal custodial parent and this should have been treated as a motion for change of custody to acknowledge Klein's care of C.K. for the first two years is an erroneous interpretation of the law. There was no prior order establishing custody, and this motion was properly brought as an initial determination of custody. Klein's initial custody and care of C.K. was properly acknowledged in consid-

ering other factors under N.D.C.C. § 14–09–06.2(1). Although the district court recognized this was an initial custody proceeding, its findings on several factors appear to have been colored by its belief Klein's care of C.K. for the initial period after birth was the equivalent of a legal determination of custody. By stressing the lack of harm to C.K. during Klein's care of the child for the first two years of his life as an "other factor" under factor (m), the court erroneously attempted to engraft change of custody requirements onto the initial custody procedure.

[¶ 26] The court also relied upon Larson's refusal to allow additional visitation in one instance when Klein's mother came to town. In August 2005, while the interim order was in effect, Klein's mother came to Bismarck at a time when Larson had C.K. She called Larson's cell phone and demanded that she get C.K. for the duration of her visit. The district court was being overly generous when it stated "the tone of Klein's mother was sharp and aggressive, and her language was crude." The transcript of the call demonstrates a venomous, profanity-laced tirade, attacking Larson and threatening he would "pay" if he did not comply with her demand for extra visitation. The district court's characterization of Larson's refusal to acquiesce in these vituperative threats as "unreasonable and lacking in compassion" distorts the reality of the situation. In fact, this incident raises concerns whether Klein's mother's obvious hostility toward Larson might have an adverse effect upon C.K. *See Hurt v. Hurt,* 2001 ND 13, ¶ 14, 621 N.W.2d 326 (a parent must nurture the child's relationship with the other parent and has a duty to not turn the child away from the other parent by "poisoning the well"); *Hendrickson v. Hendrickson,* 1999 ND 37, ¶ 7, 590 N.W.2d 220 (same).

[¶ 27] We conclude the trial court misapplied the law in analyzing factor (m), and we are left with a definite and firm conviction a mistake has been made. Viewing the evidence in the record under a correct interpretation of the law, we conclude the trial court's finding that factor (m) favored Klein is clearly erroneous, and factor (m) either favored Larson or favored neither party.

D

[¶ 28] On the basis of its analysis and findings on the factors under N.D.C.C. § 14–09–06.2(1), the district court found C.K.'s best interests would be served by awarding custody to Klein. In reaching this result, the court relied on its determination that three of the factors favored Klein, one favored Larson, and the rest favored neither party. We have determined the court's findings on the three factors purportedly favoring Klein were clearly erroneous, and those factors either favor Larson or favor neither party. Thus, under an appropriate analysis of the law and facts, no factor under N.D.C.C. § 14–09–06.2(1) favored Klein, and at least one factor (factor e) favored Larson.

[¶ 29] Throughout its discussion of the child custody factors under N.D.C.C. § 14–09–06.2, the district court continually downplayed the significant evidence that Klein's living arrangements had been exceedingly unstable, she had changed jobs frequently, she associated with methamphetamine users, and she had continual and ongoing criminal violations. The court effectively excused much of this conduct by its repeated references to the difficulties Klein faced as a young, single mother. The ultimate issue in a child custody proceeding, however, is not considerations of fairness to the parents or whether there are explanations for a parent's prior difficulties or misconduct. *See Gu-*

*skjolen,* 391 N.W.2d at 643; *Ebertz,* 338 N.W.2d at 655. The ultimate issue is what is in the best interests of the child. N.D.C.C. § 14–09–06.1. On this record, the only logical conclusion is that C.K.'s best interests will be served by awarding custody to Larson.

[¶ 30] On the basis of the record in this case, we are left with a definite and firm conviction a mistake has been made, and the district court's finding that it was in C.K.'s best interests to award custody to Klein is clearly erroneous. We therefore reverse the judgment awarding custody to Klein.

## IV

[¶ 31] We have considered the remaining issues and arguments raised by the parties and find them either unnecessary to our decision or without merit. The judgment is reversed, and we remand for entry of judgment awarding custody to Larson, with appropriate provisions for visitation and child support.

[¶ 32] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, J., concur.

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 33] I concur with that part of the majority opinion concluding factors (d), (f) and (m) of section 14–09–06.2(1), N.D.C.C., were misapplied. However, I respectfully dissent from that portion of the majority's opinion adjudicating the factors and awarding custody to Larson. Doing so, I am not suggesting Larson should not have custody; instead, that determination is for the district court and not us.

[¶ 34] A misapplication of law generally warrants reversal of the judgment and remand so the district court can apply relevant facts to the law as clarified by this Court. Unless the facts are undisputed, a district court's misapplication of law does not warrant this Court taking over the fact-finding function and deciding the case in lieu of the district court. Yet I believe the majority has done just that by re-weighing evidence and by making its own findings under statutory factors (d), (f) and (m). Majority opinion at ¶¶ 14, 17–21, and 25–27.

[¶ 35] This Court reviews findings of fact under the clearly erroneous standard. Majority opinion at ¶ 6. Our case law is replete with holdings that we will not retry the case or substitute our judgment for the district court's if its determination is supported by evidence in the record. *See, e.g., Hogue v. Hogue,* 1998 ND 26, ¶ 9, 574 N.W.2d 579. This Court also has often said that, unless we are left with a definite and firm conviction a mistake has been made, we will not re-weigh evidence or re-assess witness credibility when the record supports the district court's findings, and that we will not reverse the district court's decision merely because we might have reached a different result. *See, e.g., Hentz v. Hentz,* 2001 ND 69, ¶ 6, 624 N.W.2d 694.

[¶ 36] Here, the law was misapplied below. The district court needs to correct that error on remand by applying the disputed facts of this case to the law this Court has directed be used. But instead of remanding to let the district court complete its work, the majority is adjudicating this case under the set of facts that the majority finds persuasive. Doing so, I believe the majority is improperly stepping into the fact-finding role normally reserved to the district court. I therefore respectfully dissent from those portions of the opinion adjudicating facts and ordering entry of judgment for Larson.

[¶ 37] MARY MUEHLEN MARING, J., agrees.