2007 ND 134

**Cynthia L. BURNS, Plaintiff and Appellant,**

v.

**Bartley D. BURNS, Defendant and Appellee.**

No. 20060218.

Supreme Court of North Dakota.

Aug. 22, 2007.

Robert S. Rau, Bosard, McCutcheon & Rau, Ltd., Minot, N.D., for plaintiff and appellant.

Michael S. McIntee, McIntee Law Firm, Towner, N.D., for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Cynthia L. Burns appealed from a divorce judgment granting custody of the couple's two children to Bartley D. Burns. We conclude the district court did not abuse its discretion in allowing one of the children's teachers to testify, and the court's award of custody to Bartley Burns is not clearly erroneous. We affirm.

I

[¶ 2] The parties married in 1991 and resided during the marriage in Surrey. They have two children, a son born in 1993 and a daughter born in 1997. The son has been diagnosed with autism, Tourette's syndrome, and attention deficit disorder. He is a special needs child who requires and receives individual attention from special education personnel at school. The daughter is healthy except for "stomach problems due to stress."

[¶ 3] In August 2004, Cynthia Burns and the children left the marital home in Surrey and moved to Fargo. Cynthia Burns claimed she left Surrey because of abuse and improper disciplinary measures used by Bartley Burns against their son.

The triggering event occurred at a family gathering in Minnesota where Bartley Burns "knuckled" the son on the back of the head to calm him down. She originally stayed at a women's shelter in Fargo and filed a report of abuse and neglect against Bartley Burns. Following an investigation, authorities concluded Bartley Burns posed no risk to the children and services were not required.

[¶ 4] Cynthia Burns commenced this divorce action in October 2004. Bartley Burns moved for an interim order requesting that the district court award temporary custody of the children to him in Surrey pending the divorce proceedings. The court granted the motion in December 2004. Following the divorce trial in October 2005, the court divided the marital property, awarded custody of the children to Bartley Burns, and granted Cynthia Burns reasonable visitation. The court noted the testimony that " 'tips the scales' " in Bartley Burns's favor was given by two of the son's teachers, one from the Fargo school system and one from the Surrey school system, who testified that *"familiarity, routine* and *non-fluctuating schedules* are extremely important to an autistic child"* and that "it is very beneficial for an autistic child to be in the *same surroundings* and around the *same people."*

II

[¶ 5] Cynthia Burns argues the district court erred in admitting into evidence "expert" testimony that was not disclosed by Bartley Burns before trial.

[¶ 6] Bartley Burns presented the testimony of Marilyn Ternes, the son's case manager and special education teacher at the Surrey school. Ternes has credentials allowing her to teach students with any disabilities, and she had been working with the child for six years. Cynthia Burns's

attorney objected on the grounds that Bartley Burns had failed to disclose Ternes as an expert witness and that her testimony would be cumulative to the evidence presented by two other Surrey school teachers who had previously testified. Bartley Burns's attorney responded that Ternes was not being presented as an expert, but as a "factual witness[ ]" who had seen and observed the son, much like Cynthia Burns's witness, Erica Hewitt, a para-professional with the Fargo school system who testified about her work with the son. Cynthia Burns's attorney also claimed surprise. The district court overruled the objection, concluding Cynthia Burns's attorney could adequately address any concerns on cross-examination. Ternes testified about the problems associated with an autistic child.

[¶ 7] Whether Bartley Burns offered Ternes to provide opinion testimony is not an issue we need to decide on this appeal. Ternes's testimony was similar to testimony given by Hewitt, whom Cynthia Burns did not disclose before trial as an expert witness. A district "court has broad discretion over the conduct of a trial or hearing, including limitations on the number of witnesses." *Gullickson v. Kline*, 2004 ND 76, ¶ 15, 678 N.W.2d 138. "A district court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner, when its decision is not the product of a rational mental process by which the facts of record and law relied upon are stated and considered together for the purpose of achieving a reasonable determination, or when it misinterprets or misapplies the law." *Gisvold v. Windbreak, Inc.*, 2007 ND 54, ¶ 5, 730 N.W.2d 597. We have said a continuance is the proper remedy for a party claiming surprise, *e.g.*, *Paulson v. Paulson*, 2005 ND 72, ¶ 16, 694 N.W.2d 681, and " '[a] judgment will not ordinarily be reversed

on appeal for surprise when no request is made for a continuance at the time and there is no showing of inability to meet the situation.' " *City of Grand Forks v. Scialdone*, 2005 ND 24, ¶ 9, 691 N.W.2d 198 (quoting *State v. Hirschkorn*, 2002 ND 36, ¶ 9, 640 N.W.2d 439); *Reimche v. Reimche*, 1997 ND 138, ¶ 9, 566 N.W.2d 790. Cynthia Burns did not seek a continuance and has not shown she was unable to meet the situation. The district court did not abuse its discretion in allowing Ternes to testify.

### III

[¶ 8] Cynthia Burns argues the district court erred in awarding custody of the children to Bartley Burns.

[¶ 9] A district "court's decisions on child custody, including the ultimate award of custody, are treated as findings of fact and will not be set aside on appeal unless they are clearly erroneous." *Klein v. Larson*, 2006 ND 236, ¶ 6, 724 N.W.2d 565. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made." *Gietzen v. Gabel*, 2006 ND 153, ¶ 6, 718 N.W.2d 552. "Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result." *Jelsing v. Peterson*, 2007 ND 41, ¶ 11, 729 N.W.2d 157. "A choice between two permissible views of the weight of the evidence is not clearly erroneous, ... and our deferential review is especially applicable for a difficult child custody decision involving two fit parents." *Id.*

[¶ 10] The district court found that most of the statutory best interest factors under N.D.C.C. § 14–09–06.2(1) were either inapplicable or favored neither party. The court found that while factor (j) (evidence of domestic violence) favored Cynthia Burns, factors (d) (the length of time the children have lived in a stable, satisfactory environment and the desirability of maintaining continuity) and (m) (any other factors considered by the court to be relevant to a particular child custody dispute) favored Bartley Burns.

A

■ [¶ 11] Cynthia Burns argues the court erred in finding she did not have the advantage under factor (c) (the disposition of the parents to provide the children with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs). The court evaluated this factor as a " 'plus' " for both parents, finding "no discernable difference between Bart and Cynthia." Although Cynthia Burns claims she was the parent who handled most of the food and clothing needs of the children and obtained remedial care for the son, the record also reflects that from 1999 through 2004, Bartley Burns ran a home business and tended to the children's needs while Cynthia Burns was employed in various jobs outside of the home. Bartley Burns cared for the children while Cynthia Burns was working, took the children to school, and dealt with school personnel concerning the son's special needs on a daily basis. The record also reflects that both parties are capable of providing for the children's material needs. The district court's finding that factor (c) did not favor either party is not clearly erroneous.

B

■ [¶ 12] Cynthia Burns argues the district court erred in awarding custody to Bartley Burns because he "hits his children and has a history of doing so" and she took the children to Fargo to remove them from what she described as "an abusive setting."

■ [¶ 13] There is some evidence of violence inflicted by the parties against each other and against the children through disciplinary measures. The court found no credible evidence of domestic violence to make the N.D.C.C. § 14–09–06.2(1)(j) presumption against an award of custody applicable. "If the evidence of domestic violence does not rise to the level to trigger the presumption, the court may still consider the evidence as one of the best-interest factors." *DeMers v. DeMers,* 2006 ND 142, ¶ 7, 717 N.W.2d 545. The court found that this factor favored Cynthia Burns based on disciplinary measures employed by Bartley Burns on the children. Bartley Burns had spanked the daughter and "knuckled" the son on the back of his head on more than one occasion "to get his attention" and stop his bouts of uncontrollable screaming. In its analysis of factor (j), the court said:

> For his part, Bart readily acknowledges that he made a serious mistake when he "knuckled" [the son] in the back of the head—and he genuinely regrets having employed this method of "discipline." Bart also candidly admits that he has indeed spanked both of the children on their bottoms, and has probably left some bruises on [the daughter] in the process. However, he relates that he is not "an abuser of children" and he assures that [sic] Court that he has "made some changes" in his life.
>
> . . . .
>
> While not taking issue with what the Cass County investigators concluded in their report, the Court is persuaded, by

the greater weight of the evidence, that Bart clearly "crossed the line" (on more than one occasion) between what is appropriate, and inappropriate, discipline for a young child—particularly in the case of a special needs child such as [the son].

. . . .

To his credit, Bart is not denying that certain of his "disciplinary" techniques have been entirely inappropriate. However, while he openly recognizes the error of his ways, history may well repeat itself unless he develops some coping skills to employ whenever he feels that he's being pushed to the limit by the children's behavior. While the Court by no means views Bart to be a *danger* to his children, the Court is of the opinion that he will be a much better parent if he develops these needed coping skills— and the Court recommends that he seek outside help to obtain these skills.

[¶ 14] Parents have the right to use reasonable force to discipline their children. N.D.C.C. § 12.1–05–05(1); *Thompson v. Olson*, 2006 ND 54, ¶ 17, 711 N.W.2d 226; *Dinius v. Dinius*, 1997 ND 115, ¶ 15, 564 N.W.2d 300. Here, the district court's finding that Bartley Burns was not a *"danger"* to his children is an implicit finding that he caused no "serious physical harm" to the children by his disciplinary measures, and there is no evidence in the record to support a finding of "serious physical harm." N.D.C.C. § 50–25.1–02(3) (definition of an "'[a]bused child'"); *cf. Hill v. Weber*, 1999 ND 74, ¶¶ 1, 11, 592 N.W.2d 585 (district court's finding that father repeatedly struck daughter on the head with enough force to create a substantial risk of serious bodily injury constituted a material change of circumstances as a matter of law warranting a change of custody). Because the evidence was insufficient to trigger the domestic

violence presumption, the court properly gave factor (j) equal consideration with the other applicable factors under N.D.C.C. § 14–09–06.2(1) when determining the best interests of the children. *See, e.g., Ternes v. Ternes*, 555 N.W.2d 355, 357–58 (N.D. 1996). Under these circumstances, the district court's finding factor (j) favored Cynthia Burns did not require that she be awarded custody of the children.

C

[¶ 15] Cynthia Burns argues the court erred in finding factor (d) favored Bartley Burns.

[¶ 16] In its analysis of factor (d), the court stated:

> The evidence indicates that Bart and Cynthia separated on August 24, 2004, when Cynthia and the parties' two (2) minor children . . . left the family home near Surrey, North Dakota, and moved to Fargo, North Dakota.
>
> The former family home is a 1971 model mobile home, with a three-stall garage. While this is obviously an older model dwelling, trial testimony establishes that all of the windows were recently replaced, as was the exterior siding. Further, some new carpet and paneling have been installed in the interior of the home. The most significant improvement in terms of the Court's custody decision, however, is the addition of a third bedroom which is being occupied by [the daughter]. Prior to the children's relocation to Fargo, this was the only home they had ever known—and all indications are that it was more than adequate for their needs, and remains so today.
>
> The evidence also indicates that the children benefit a great deal from their association with the students, administration, teachers and staff at the Surrey School. This has proven to be an excel-

lent learning environment for both [children]—particularly so for [the son], a special needs child who requires (and regularly receives) a considerable amount of individual attention from qualified special education personnel (specifically, Marilyn Ternes). The Court also takes note of the high regard Bart has for [the son's] classmates, saying that they are "remarkable" and "very caring" toward [the son].

The children's way of life in rural Surrey was interrupted by an approximately four (4) month stay (from late August of 2004 through late December of that year) with Cynthia in Fargo, North Dakota, before the Court (Hon. Gary A. Holum, District Judge) ordered that they be returned to Ward County to live with Bart. While it appears that [the children] adjusted quite well to their new surroundings in Fargo, and there is no question that Cynthia provided them with a very suitable living environment during the short time they were there, "home" for these children is still the former family home near Surrey. If the goal is to maintain continuity in these children's lives, it appears that this goal would be better served by allowing the children to remain in the former family home near Surrey.

Cynthia Burns contends the court's finding improperly focuses on the physical abode and the community, rather than the "environment" in which the children lived, and because she was "the parent that maintained the environment and which made the home what it was," the court should have found factor (d) favored her.

[¶ 17] Factor (d) requires consideration of the stability and quality of the child's past environment. *Klein,* 2006 ND 236, ¶ 10, 724 N.W.2d 565. Factor (d) "addresses past stability of environment, including a consideration of place or physical

setting, as well as a consideration of the prior family unit and its lifestyle as part of that setting. It also addresses the quality of that past environment, and the desirability of maintaining continuity. Under factor d, 'prior custody is a factor to be considered when determining the custodial arrangement which is best for the child.'" *Stoppler v. Stoppler,* 2001 ND 148, ¶ 9, 633 N.W.2d 142 (internal citation omitted). *See also Eifert v. Eifert,* 2006 ND 240, ¶ 8, 724 N.W.2d 109. The stability of a child's home environment can be undermined by frequent moves to unfamiliar settings, a succession of persons residing in the home, live-in romantic companions for the custodial parent, or other potential disruptions such as the inability to maintain steady employment. *Klein,* at ¶ 10. Although more than a physical structure or a geographic location should be analyzed under factors (d) and (e) (the permanence, as a family unit, of the existing or proposed custodial home), *see Schmidt v. Schmidt,* 2003 ND 55, ¶ 12, 660 N.W.2d 196, a district "court's concerns about maintaining the custodial relationship that existed prior to the divorce and allowing the child to attend the same school and live in the same house are all valid considerations under factor d." *Shaw v. Shaw,* 2002 ND 114, ¶ 7, 646 N.W.2d 693.

[¶ 18] The district court addressed the children's living environment in both Surrey and Fargo and found that while Cynthia Burns provided them a "very suitable living environment" in Fargo, the children would be better off in Surrey because "the children benefit a great deal from their association with the students, administration, teachers and staff at the Surrey School." We have also noted that "although factor (d) uses an approach looking at the past, there is an overlap between factors (d) and (e)." *Jelsing,* 2007 ND 41, ¶ 14, 729 N.W.2d 157. In analyzing factor (e), which the court found favored no one,

the court noted that neither party had a " 'significant other' " and that their respective " 'family unit[s]' " would consist of each party and the children. The court further noted that neither party planned on moving from their respective homes, "there is a great deal of permanency inherent in Bart's living arrangements," and "Cynthia has obtained stable employment in Fargo, has 'settled in' to the community and looks to make Fargo her home for the foreseeable future."

[¶ 19] The district court did emphasize the continuity of the son's physical setting, but this emphasis is supported by the record and the son's status as a special needs child. In addressing subdivision (m), the district court relied on the testimony of the son's Surrey and Fargo teachers.

In the final analysis, though, the Court is of the opinion that both Bart and Cynthia are good parents to [the son] and [the daughter]. The Court believes that they will thrive in the care of either parent, and this is a real plus for the children. Nevertheless, the very nature of divorce is that one of these two fit parents must be designated as the custodial parent, while the other will assume the role of the noncustodial parent.

In arriving at its custody decision in this case, the testimony that "tips the scales" in Bart's favor came from two (2) of [the son's] teachers, Ms. Erica Hewitt and Ms. Marilyn Ternes. Both of these individuals testified that *familiarity, routine* and *non-fluctuating schedules* are extremely important to an autistic child such as [the son]. Both Ms. Hewitt and Ms. Ternes indicated that it is very beneficial for an autistic child to be in the *same surroundings* and around the *same people*. Ms. Ternes specifically stated that autistic children have difficulty transitioning from one setting to another, noting that, "Change is not easy for a student who already struggles from the get-go."

[The son] and [the daughter] began the 2004–05 school year at the Surrey School, but were abruptly removed from that system on the very first day of school and whisked off to Fargo, where Cynthia enrolled them at Bennett Elementary School. After what looks to have been a successful new beginning for the children at Bennett Elementary, they were pulled out of that educational setting at mid-year and placed back into the Surrey School. In view of what Ms. Hewitt and Ms. Ternes have said concerning the importance of *continuity* in [the son's] life, now is not the time to "pull the rug out from underneath him" and send him back to Fargo. While [the daughter] is no doubt better able to adapt to change than is [the son], bouncing back and forth between different homes and different schools can't be good for her physical and emotional well-being either.

Although Cynthia Burns contends the district court improperly "doubly counted" the son's handicap and needs against her by focusing on them in finding factors (d) and (m) favored Bartley Burns, we believe it highlights the added weight the court believed should be given to this consideration based on the evidence in the record.

[¶ 20] Cynthia Burns essentially contends that she was the primary caretaker of the children during the marriage and that this status should have been given greater weight by the district court in its best interest analysis. A " 'primary caretaker is generally the parent who provides the child with daily nurturance, care and support.' " *Kjelland v. Kjelland*, 2000 ND 86, ¶ 15, 609 N.W.2d 100 (internal citation omitted). The court made no explicit finding on the primary caretaker in this family. The court's findings that most of the

best interest factors favored neither party and the evidence of both parents' involvement in the children's caretaking strongly suggest the court believed there was no primary caretaker in this case. *See, e.g., Reeves v. Chepulis*, 1999 ND 63, ¶¶ 18–19, 591 N.W.2d 791. In any event, being a child's primary caretaker does not guarantee a custody award in a divorce action because the primary caretaker rule has not been given presumptive status in this state. *Schmidt*, 2003 ND 55, ¶ 9, 660 N.W.2d 196; *see also Dufner v. Dufner*, 2002 ND 47, ¶ 20, 640 N.W.2d 694. We conclude the court did not err in its analysis of factors (d) and (m) under these circumstances, and its finding that these factors favored Bartley Burns is not clearly erroneous.

[¶ 21] We have considered Cynthia Burns's other arguments and find them unpersuasive. The court's finding that it is in the best interests of the children to be placed in the custody of Bartley Burns is not clearly erroneous.

### IV

[¶ 22] The judgment is affirmed.

[¶ 23] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, JJ, concur.

DALE V. SANDSTROM, J., concurs in the result.

MARING, Justice, concurring in part and dissenting in part.

[¶ 24] I concur in parts II and III A and, respectfully, dissent to parts III B and III C of the majority opinion. I am of the opinion the trial court clearly erred in applying the law to the facts of this case as it pertained to Bartley Burns's use of force on the child, and the trial court misapplied factor (d). I would reverse and remand for the trial court to properly apply the law pertaining to abuse of a child to the facts of this case and to perform a proper analysis of factor (d) and factor (j).

### I

[¶ 25] The majority, at ¶ 14, concludes "the district court's finding factor (j) favored Cynthia Burns did not require that she be awarded custody of the children." In *Hill v. Weber*, 1999 ND 74, ¶ 1, 592 N.W.2d 585, our Court was asked to determine whether the trial court's "finding that the father repeatedly struck his older daughter on the head with enough force to create a substantial risk of serious bodily injury" was clearly erroneous. We concluded the trial court was not clearly erroneous and affirmed the judgment. *Id.* In *Hill*, 1999 ND 74, ¶ 3, 592 N.W.2d 585, there were facts similar to those in this case:

> [T]he older daughter, age 14, alleged abuse, testifying she was often struck on the back of her head by her father and told to get her duties done. She further testified her father would hit her as hard as he could with an open hand, and that he had been doing it since before the divorce. The mother testified the father had a history of abusing her and the children.

Our Court analyzed the trial court's findings and concluded:

> The district court found the violence against the older daughter created a threat to her health and safety. We agree with the trial court, if the criteria of [N.D.C.C. § 14–09–06.6(3)(b)] are met, there is as a matter of law a material change of circumstances that warrants a change of custody under [N.D.C.C. § 14–09–06.6(6)].
>
> . . . .
>
> Here, the older daughter testified her father repeatedly hit her as hard as he

could on the back of her head with an open hand, causing her pain. Although there was contrary testimony, the district court found the older daughter more credible than the other witnesses. The district court noted the general state of human knowledge that repeated hits to the head may cause injury. *See* Arthur C. Roberts, *The Value of Outcome Studies in Litigating Closed Head Injury Cases,* 30 Trauma 39 (1988). The finding of fact is supported by the testimony of the older daughter, and we will not substitute our judgment on credibility for that of the district court. The finding of fact is not clearly erroneous.

*Id.* at ¶¶ 11, 13.

[¶ 26] Despite *Hill,* at ¶ 13, in which our Court acknowledged the injury repeated hits to the head may cause, the majority claims, at ¶ 14, "[p]arents have the right to use reasonable force to discipline their children." The majority continues, at ¶ 14, "[h]ere, the district court's finding that Bartley Burns was not a '*danger*' to his children is an implicit finding that he caused no 'serious physical harm' to the children by his disciplinary measures, and there is no evidence in the record to support a finding of 'serious physical harm.'" The majority concludes, at ¶ 14, "[b]ecause the evidence was insufficient to trigger the domestic violence presumption, the court properly gave factor (j) equal consideration with the other applicable factors under N.D.C.C. § 14–09–06.2(1) when determining the best interests of the children." Repeatedly "knuckling" the back of a child's head goes beyond reasonable force. I fail to comprehend how the same Court that concluded repeated hits to the head may cause injury and are a threat to the health and safety of a child, can now claim repeatedly "knuckling" the back of a child's head does not present serious physical harm. I am of the opinion the trial court clearly erred in applying the law to the facts of this case. The trial court should reconsider the weight of this factor on a remand.

II

[¶ 27] The trial court found factor (d) of N.D.C.C. § 14–09–06.2(1) favored awarding custody to Bartley Burns. The majority, at ¶ 20, concludes the trial court's finding that factor (d) favored Bartley Burns is not clearly erroneous. Factor (d) requires the trial court's consideration of the "length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity." N.D.C.C. § 14–09–06.2(1)(d).

[¶ 28] In *Schmidt v. Schmidt,* 2003 ND 55, ¶¶ 26, 27, 660 N.W.2d 196 (Maring, J., concurring), I wrote:

I continue to be of the opinion that when applying factor (d), a trial court must examine not only past stability of environment, including a consideration of place or physical setting, but a consideration of the prior family unit and its lifestyle as part of that setting. *See Stoppler v. Stoppler,* 2001 ND 148, ¶¶ 26–31, 633 N.W.2d 142 (Maring, J., concurring in part and dissenting in part). This includes consideration of the continuity of the relationship with the parent who had cared for the children on a daily basis. *Id.* at ¶ 28.

... I continue to be troubled by the emphasis on the continuity of the child's physical setting over the importance of the continuity of the parent-child relationship in both factors (d) and (e). I am concerned we still have vestiges of the philosophy that the parent who receives the home where the children have grown up will get custody of the children.

Four years later, the concerns I expressed in *Schmidt* still exist. The trial court's analysis of factor (d) focused on the child's physical home setting in Surrey and the child's school in Surrey, concluding "[i]f the goal is to maintain continuity in these children's lives, it appears that this goal would be better served by allowing the children to remain in the former family home near Surrey." The trial court made no mention of the child's need for continuity of the parent-child relationship and did not determine how the child's continuity of his relationship with the parent who had cared for him on a daily basis would be affected by its decision. The trial court made clear that the child's familiarity with Surrey and the Surrey school were more important than the continuity of the child's relationship with his mother. The trial court seemed to say, and the majority supports that, "all things being equal," the parent who receives the marital home receives the child, even if that home environment included inappropriate discipline for a young disabled child such as repeated "knuckling" of the back of the child's head.

[¶ 29] Further, the majority, at ¶ 20, notes that "being a child's primary caretaker does not guarantee a custody award in a divorce action because the primary caretaker rule has not been given presumptive status in this state." However, I am of the opinion the trial court completely ignored the issue of who was the primary caretaker and failed to include this consideration in its analysis of factor (d). Under factor (d), the trial court is to examine the past relationship between the parent and child, including who took care of the child's basic and, in this case, special needs.

[¶ 30] I am of the opinion the trial court erred on its application of factor (d). The judgment should be reversed and re-manded for a proper analysis of factor (d) and factor (j).

[¶ 31] MARY MUEHLEN MARING, J.