Filed 11/17/09 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2009 ND 189

L.J. Bernhardt, Director of Stark 

County Social Service Board, or 

any Successor County, As Assignee 

of Juanita K. Martin, Plaintiff

Juanita K. Martin, Appellant

v.

Scott J. Harrington, Defendant and Appellee

No. 20080350

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable William A. Herauf, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Kent M. Morrow, 411 North 4th Street, P.O. Box 2155, Bismarck, ND 58502-

2155, for appellant.

Robert A. Keogh, 141 3rd Street West, P.O. Box 1202, Dickinson, ND 58602-

1202, for defendant and appellee.

Bernhardt v. Harrington

No. 20080350

Crothers, Justice.

[¶1] Juanita Martin appeals from a judgment awarding Scott Harrington physical custody of the parties’ minor child.  We affirm, concluding the district court’s custody determination is not clearly erroneous.

I

[¶2] Martin and Harrington have a daughter, born in January 1999, but have never been married to each other.  After the birth, Martin, Harrington and their daughter lived together in Dickinson until the parties separated in 2001.  Martin and the child relocated to Bismarck.  In May 2007, Martin and the child were evicted from their Bismarck apartment.  The child spent the summer of 2007 with her grandmother in Dickinson and attended a Dickinson elementary school that fall.  In November 2007, the child moved in with Harrington at his Dickinson residence.  

[¶3] In December 2007, Harrington requested an initial custody determination and an ex parte interim order to secure temporary custody of the child.  The district court entered an ex parte interim order, giving Harrington temporary custody of the child.

[¶4] Following the October 2008 custody trial, the district court awarded custody to Harrington, granted Martin reasonable visitation and ordered Martin to pay child support.

II

[¶5] Martin argues the district court erred in awarding custody of the child to Harrington.  “A district court’s award of custody is treated as a finding of fact and, on appeal, will not be reversed unless it is clearly erroneous under N.D.R.Civ.P. 52(a).”  
Wessman v. Wessman
, 2008 ND 62, ¶ 12, 747 N.W.2d 85.  “A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made.”  
Burns v. Burns
, 2007 ND 134, ¶ 9, 737 N.W.2d 243 (quoting 
Gietzen v. Gabel
, 2006 ND 153, ¶ 6, 718 N.W.2d 552).  “Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court’s initial custody decision merely because we might have reached a different result.”  
Jelsing v. Peterson
, 2007 ND 41, ¶ 11, 729 N.W.2d 157.  This standard of review is particularly relevant when the district court makes “a difficult child custody decision involving two fit parents.”  
Hanisch v. Osvold
, 2008 ND 214, ¶ 4, 758 N.W.2d 421 (quoting 
Jelsing
, at ¶ 11).

[¶6] A district court’s award of initial custody is governed by N.D.C.C. § 14-09-

06.1, requiring the court to “award custody of the child to the person who will better promote the best interests and welfare of the child.”  
Klein v. Larson
, 2006 ND 236, ¶ 7, 724 N.W.2d 565.  In its determination, the “trial court must consider all [relevant] factors specified in N.D.C.C. § 14-09-06.2(1).”  
Schmidt v. Schmidt
, 2003 ND 55,  ¶ 6, 660 N.W.2d 196.  “Between the mother and father, . . . there is no presumption as to who will better promote the best interests and welfare of the child.”  N.D.C.C. § 14-09-06.1.
(footnote: 1)
[¶7] Here, the district court considered all of the best interests factors in making its custody determination.  The district court found factor (d) favored Harrington, while factors (a), (b), (c), (e), (f), (g), (h), (i), (j), (k), (l) and (m) favored neither party.

A

[¶8] Martin argues the district court erred in finding factor (b) favored neither party.  When considering factor (b), the court must look at “[t]he capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.”  N.D.C.C. § 14-09-06.2(1)(b).
(footnote: 2)  Martin contends factor (b) should have been weighed in her favor because she was her daughter’s primary caretaker and provider from January 1999 until May 2007 and because Harrington only served in that capacity for the eleven months preceding trial.

[¶9] The district court’s determination factor (b) favors neither party is supported by evidence in the record.  Testimony from multiple witnesses supports the court’s finding, “There is no doubt that in this case both parents dearly love [the child] and [the child] dearly loves both parents.”  The record also reflects both parties served as primary caretaker and provider at some point in their daughter’s life, with Martin occupying this role from January 1999 to May 2007 and with Harrington occupying this role from November 2007 to October 2008.  The court’s determination factor (b) favored neither party is based on the court’s observation of the parties and their witnesses, which is given great deference on appeal.  
Hanisch
, 2008 ND 214, ¶ 24, 758 N.W.2d 421 (citing 
Mayo v. Mayo
, 2000 ND 204, ¶ 24, 619 N.W.2d 631).  “Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess credibility when there is evidence to support a district court’s findings, and we will not reverse a district court’s decision merely because we might have reached a different result.”  
Dvorak v. Dvorak
, 2006 ND 171, ¶ 11, 719 N.W.2d 362 (citing 
Hentz v. Hentz
, 2001 ND 69, ¶ 6, 624 N.W.2d 694).  The district court’s finding factor (b) favored neither party is supported by the evidence and is not clearly erroneous.

B

[¶10] Martin argues the court erred in finding factor (c) favored neither party.  Under factor (c), the court must look at “[t]he disposition of the parents to provide the child with food, clothing, medical care, . . . and other material needs.”  N.D.C.C. § 14-09-

06.2(1)(c).  Martin claims factor (c) should have been weighed in her favor because she tended to the child’s needs for eight years and because Harrington has done so for only eleven months.

[¶11] In analyzing factor (c), the district court heard testimony indicating both parents were disposed to provide for their child according to N.D.C.C. § 14-09-

06.2(1)(c).  Harrington believes that if Martin were given custody of the child, she would provide the child with food, clothing, shelter, education and medical needs.  Conversely, Martin acknowledges Harrington has stepped up to his parental responsibilities since November 2007.  Based on this testimony and the district court’s opportunity to observe the witnesses, the court’s finding factor (c) favored neither party is supported by the evidence and is not clearly erroneous.

C

[¶12] Martin argues the court erred in finding factor (d) favored Harrington.  Martin claims the district court should not have considered in its stability analysis the eleven months Harrington was the child’s primary caretaker because at the root of Harrington’s time with the child was the ex parte interim order, which Martin asserts was based on misleading statements.  However, Martin failed to challenge the necessity of the ex parte interim order by requesting a hearing after its issuance.

[¶13] When an ex parte interim order is entered in a domestic relation case, the North Dakota Rules of Court require the order to provide:

“(A)  That the party to whom the order is directed, upon written motion may have a hearing upon the necessity for the issuance of the order or the amounts to be paid; and

“(B)  That unless the motion is served and filed in the office of the clerk of district court within 10 days after service of the interim order, the order becomes final and is nonappealable, pending a final determination of the issues raised by the pleadings or until further order of the court in the event of a material change of circumstances.

“(C)  That any hearing on the order must be held within 30 days from the date the motion is filed, unless an earlier hearing is required under N.D.C.C. ch. 14-07.1, or an application for change of venue is pending.  If the ex parte order contains provisions delineated in N.D.C.C. ch. 14-

07.1, the hearing must be scheduled in a timely manner to conform with the chapter.”

N.D.R.Ct. 8.2(a)(5)(A-C).  The district court’s ex parte interim order instructed Martin of her right to a hearing on the order.  Martin did not request a hearing, and none was conducted.  Under N.D.C.C. § 1-02-28, a person may waive their rights “unless such waiver would be against public policy.”  “For a waiver to be effective, it must be a voluntary and intentional relinquishment and abandonment of a known existing right, advantage, benefit, claim or privilege which, except for such waiver, the party would have enjoyed.”  
Steckler v. Steckler
, 492 N.W.2d 76, 79 (N.D. 1992) (citing 
Production Credit Ass’n v. Henderson
, 429 N.W.2d 421, 423 (N.D. 1988); 
Gajewski v. Bratcher
, 221 N.W.2d 614, 628 (N.D. 1974)).  When a right is waived, the “right is gone forever and cannot be recalled.”  
Meyer v. Nat’l Fire Ins. Co.
, 67 N.D. 77, 89, 269 N.W. 845, 852 (1936); 
see
 28 Am. Jur. 2d 
Estoppel and Waiver
 § 156 (1966 & Supp. 1999) (“Ordinarily, a waiver operates to preclude a subsequent assertion of the right waived or any claim based thereon.”) (internal citation omitted).

[¶14] Here, the issuance of the ex parte interim order was not immediately appealable, but it can be reviewed on this appeal.  N.D.R.Ct. 8.2(a)(5)(B).  However, Martin has not provided us with an issue to review.  The proper proceeding for Martin to challenge the factual basis of the affidavits supporting the ex parte interim order was a hearing challenging the issuance of the ex parte interim order.  N.D.R.Ct. 8.2(a)(5)(A).  Martin did not request a hearing and she did not provide the district court with any facts or any legal argument why it should have ruled differently than it did in the ex parte interim order.  By not requesting a hearing within 10 days of the issuance of the ex parte interim order, Martin waived her right to now claim the district court erred in temporarily placing the child with Harrington.  
Steckler
, 492 N.W.2d at 79.  From this it follows that the district court did not err by considering the time the child spent with Harrington due to the ex parte interim order. 

[¶15] When analyzing factor (d), the court must consider “[t]he length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.”  N.D.C.C. § 14-09-06.2(1)(d).  In 
Burns
, this Court stated:

“Factor (d) ‘addresses past stability of environment, including a consideration of place or physical setting, as well as a consideration of the prior family unit and its lifestyle as part of that setting.  It also addresses the quality of that past environment, and the desirability of maintaining continuity.’”

2007 ND 134, ¶ 17, 737 N.W.2d 243 (quoting 
Stoppler v. Stoppler
, 2001 ND 148,  ¶ 9, 633 N.W.2d 142).  

[¶16] The district court properly considered the stability and lifestyle provided by both Martin and Harrington.  The court found that Martin had provided the stable environment from January 1999 to May 2007 and that Harrington had provided the stable environment since obtaining temporary custody in November 2007.  The court also found the child’s diagnosis of acute stress disorder is a result either of Martin’s eviction or of the custodial shuffle between Martin and Harrington.  The record reflects the child is doing well in her Dickinson school.  Both parties are employed full-time, and each party rents housing with enough space for the child.  Based on these facts, evidence supported the district court’s finding on factor (d).  The district court did not err in finding factor (d) favored Harrington.

D

[¶17] Martin argues the court erred in finding factor (l) favored neither party.  This factor requires the court to examine “[t]he making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.”  N.D.C.C. § 14-09-06.2(1)(l).  Martin contends Harrington included false and deceptive allegations in the affidavits he filed supporting his motion for an ex parte interim order.

[¶18] Factor (l) requires the court to consider “[t]he making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.”  N.D.C.C. § 14-09-06.2(1)(l).  The types of harm described in factor (l) are contained in Chapter 50-25.1, Child Abuse and Neglect.  Section 50-25.1-01, N.D.C.C., protects “the health and welfare of children by encouraging the reporting of children who are known to be or suspected of being abused or neglected.”  Harm to a child under section 50-25.1-02 includes abuse, as further defined by N.D.C.C. § 14-09-22(1), and neglect or deprivation, as further defined by N.D.C.C. ch. 27-20.  N.D.C.C. § 50-25.1-02(3), (11).  

[¶19] A child is abused when “a parent, adult family or household member, guardian, or other custodian . . . willfully commits any of the following . . . :

“a.  Inflicts, or allows to be inflicted, upon the child, bodily injury, substantial bodily injury, or serious bodily injury as defined by section 12.1-01-04 or mental injury.

“b. Fails to provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child’s physical, mental, or emotional health, or morals.

“c.  Permits the child to be, or fails to exercise reasonable diligence in preventing the child from being, in a disreputable place or associating with vagrants or vicious or immoral persons.

“d.  Permits the child to engage in, or fails to exercise reasonable diligence in preventing the child from engaging in, an occupation forbidden by the laws of this state or an occupation injurious to the child’s health or morals or the health or morals of others.”

N.D.C.C. § 14-09-22(1)(a-d).

[¶20] A child is deprived and neglected when that child

“a.  Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child’s physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child’s parents, guardian, or other custodian;

“b.  Has been placed for care or adoption in violation of law;

“c.  Has been abandoned by the child’s parents, guardian, or other custodian;

“d.  Is without proper parental care, control, or education as required by law, or other care and control necessary for the child’s well-being because of the physical, mental, emotional, or other illness or disability of the child’s parent or parents, and that such lack of care is not due to a willful act of commission or act of omission by the child’s parents, and care is requested by a parent;

“e.  Is in need of treatment and whose parents, guardian, or other custodian have refused to participate in treatment as ordered by the juvenile court;

“f.  Was subject to prenatal exposure to chronic and severe use of alcohol or any controlled substance as defined in chapter 19-03.1 in a manner not lawfully prescribed by a practitioner; or

“g.  Is present in an environment subjecting the child to exposure to a controlled substance, chemical substance, or drug paraphernalia as prohibited by section 19-03.1-22.2.”

N.D.C.C. § 27-20-02(8)(a-g).

[¶21] Harrington alleged in his affidavit that Martin had provided inappropriate living conditions for the child and that Martin had effectively abandoned the child.  These are allegations of harm as defined in N.D.C.C. § 50-25.1-02.  In this regard, the district court erred when it found Harrington’s affidavit “was not made specifically under 50-25.1-02, NDCC.”  Although Harrington’s allegations contained the type of harm defined in section 50-25.1-02, the district court was not required to consider them under factor (l) because the court did not consider the allegations to be false.  
See
 N.D.C.C. § 14-09-06.2(1)(l) (allowing only false allegations of harm to be considered under factor (l)).  

[¶22] At trial, the district court did not view Harrington’s affidavits as fraudulent or deceptive.  Indeed, the statements in Harrington’s affidavit were supported by the evidence.  Harrington’s affidavit alleged, “[I]n the recent past [Martin] has had [living] conditions that weren’t appropriate.”  The testimony at trial supported this allegation, indicating that while Martin had custody of the child, a male probationer lived with the two in their apartment and was arrested during his stay for violation of probation.  Harrington’s affidavit further alleged Martin “effectively abandoned [the child].”  The record reflects that after Martin’s eviction in May 2007, she had minimal contact with the child through the summer because the child stayed with her grandmother in Dickinson.  In the fall of 2007, Martin agreed to postpone the child’s return to Bismarck and allowed the child to enroll in a Dickinson elementary school.

[¶23] We acknowledge the district court expressed its disappointment with “false accusations” in an affidavit.  However, the court did not identify the affidavit or elaborate on the nature or extent of the accusations.  Rather, the court proceeded to focus on the child’s best interests, and we are left with nothing more than this general statement regarding non-factual information.  

[¶24] Based on the evidence in the record and the deference given the district court’s decision, we conclude the district court did not err in finding Harrington’s allegations were not false.  This conclusion renders the district court’s error in misinterpreting the role of Chapter 50-25.1 under factor (l) harmless.  We therefore conclude the district court did not err in finding factor (l) favored neither party.

III

[¶25] We conclude the district court did not clearly err in analyzing the best interests factors under N.D.C.C. § 14-09-06.2.  The district court’s judgment granting custody of the minor child to Harrington is affirmed.

[¶26] Daniel J. Crothers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

Sandstrom, Justice, concurring specially.

[¶27] In support of a motion for change of custody, the grandmother submitted an affidavit.  The affidavit was substantially based on what the grandmother had been told and was framed in that way.  “I understand” and “apparently” were used repeatedly, although the dissent omits those phrases in its condensation.

[¶28] At the hearing, the mother’s lawyer objected on the ground of hearsay, and the grandmother was not permitted to testify to what the child had told her.  For reasons not explained in the record, the child did not testify.  Thus, the portions of the grandmother’s affidavit that were based on what the grandmother had been told were not supported by testimony at the hearing.

[¶29] At the close of the hearing, the mother’s lawyer argued that the affidavit statements unsupported by testimony at the hearing were “fraudulent” and “deceptive.”  The court specifically rejected both contentions.

[¶30] In its October 14, 2008, order, the court said, “Adding to the Courts [sic] difficulty is the Interim Order which is based upon an Affidavit that was filled with non-factual information.  I cannot stress how disappointing it is to have ‘factual representations’ made in an Affidavit which are not true.”

[¶31] But in its October 31, 2008, findings of fact, conclusions of law, and order for judgment, the court characterized the “affidavit that was filed in this case in support of the Interim Order” not as containing “non-factual information” or as “not true,” but instead as “not fully supported by testimony at trial.”

[¶32] To the extent there is a discrepancy between the earlier document and the findings of fact, the latter prevails.  
Adoption of Schneider
, 347 N.W.2d 126, 130 (N.D. 1984); 
Ned Nastrom Motors v. Nastrom-Peterson-Neubauer Co.
, 338 N.W.2d 64, 71 n.8 (N.D. 1983); 
Schmidt v. Plains Electric, Inc.
, 281 N.W.2d 794, 801 (N.D. 1979).

[¶33] The statute in effect at the time provided:

14-09-06.2.  Best interests and welfare of child — Court consideration — Factors.

1. For the purpose of custody, the best interests and welfare of the child is determined by the court’s consideration and evaluation of all factors affecting the best interests and welfare of the child.  These factors include all of the following when applicable:

. . . .

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.

N.D.C.C. § 14-09-06.2(1)(l) (2004).

[¶34] The dissent says, “Because the district court found facts in the affidavit to be false, the district court was required as a matter of law to consider them under factor (l).”  This statement is not correct.  The legislative history reflects that the provision as introduced at the legislature did not contain the phrase “not made in good faith.”  The bill was amended in the Senate to add the phrase.  Bonnie Palecek, in her testimony before the House Judiciary Committee, said:

The North Dakota Council on Abused Women’s Services and Coalition Against Sexual Assault in North Dakota wishes to provide the House Judiciary Committee with information concerning false allegations of child sexual abuse and express concern both over the reality of false allegations and concern for the possible chilling effect on reporting that might occur if all “unfounded allegations” result in an automatic penalty to the parent putting forth the allegation.

No one can dispute that false allegations of child sexual abuse are devastating to the one accused.  And there is also certainly a public perception that charging sexual abuse is an increasingly common manipulation of the courts to gain custody.

The challenge is to strike a balance in which false allegations are discouraged and valid incidents of child sexual abuse are reported and aggressively prosecuted.

As the Committee is no doubt aware, “Any person who willfully . . . makes a false report” under section 50-25.1-13 of the Century Code is guilty of a class B misdemeanor.  HB1378 would add to this penalty by requiring court costs and legal fees to be paid by the person making the “unfounded allegation.”  The amendment offered in the Senate sought to strike a balance and bring into synch the current penalties for false reports and the penalties set forth in this bill.

Our experience with deeply dysfunctional families is that usually the reality of sexual abuse is acknowledged for the first time when the victim of abuse has chosen to sever the relationship.  To raise it earlier would not make sense because it is such a serious allegation it often can be raised safely only from a distance, especially if there has been violence in the relationship.

Therefore, we would urge the Committee to look favorably upon the amendment presented in the Senate and carefully guard the security of the person putting forth a good faith allegation of child sexual abuse, as well as the integrity of the person possibly falsely accused.  To preserve the best interests of the child, which must remain our central concern, both aspects of this issue must be addressed.

Hearing on S.B. 2488 Before the House Judiciary Comm.
, 53d N.D. Legis. Sess. (March 2, 1993) (testimony of Bonnie Palecek, Executive Director, N.D. Council on Abused Women’s Services and Coalition Against Sexual Assault in North Dakota).

[¶35] Additionally, the statutory provision requires that the false allegations, not made in good faith, must be made “by one parent against the other.”  The primary objection here is to the allegations in the grandmother’s affidavit.  The lack of good faith would have to be on the part of the father.

[¶36] Finally, N.D.C.C. § 14-09-06.2 refers to the “making of false allegations not made in good faith, by one parent against the other, of harm to a child 
as defined in section 50-25.1-02
.”  N.D.C.C. § 14-09-06.2(1)(l) (emphasis added).  Unfortunately, neither “harm” nor “harm to a child” is, in fact, defined in section 50-25.1-02.  Bonnie Palecek’s testimony suggests that the district court’s interpretation of this ambiguous statutory provision may, in fact, be the correct one—that it was intended to apply to reports under N.D.C.C. ch. 50-25.1.

[¶37] Dale V. Sandstrom

Maring, Justice, dissenting.

[¶38] I respectfully dissent.  I agree with the majority that the district court erred as a matter of law when it did not consider false allegations under N.D.C.C. § 14-09-

06.2(1)(l).  However, I do not agree the error was harmless, and I would reverse and remand for further findings.  

[¶39] Juanita Martin was her daughter’s primary caretaker until May 2007.  Martin and Judy Harrington, the paternal grandmother, made arrangements for the child to spend the summers with Judy Harrington in Dickinson.  According to the grandmother Judy Harrington, the child spent the summer with her when the child was four, five, and six years old.  In 2007, the parties agreed to the same summer visitation.  During the summer of 2007, Judy Harrington and Martin discussed whether the child would stay in Dickinson for the fall of 2007 and return to Bismarck during the Christmas break.  Martin agreed to allow the child to start school in the fall in Dickinson. Scott Harrington was not a party to this agreement.  

[¶40] On December 6, 2007, Scott Harrington moved for an ex parte interim order seeking interim custody of the child.  In support of his motion, Harrington argued:

Because of the neglect or abandonment by her mother, [the child] has spent the past 6 months with either her father or grandmother here in Dickinson, and has enrolled in schools here.  The child is in counseling to deal with issues that seem to result from the behaviors of her mother.  Some trauma seems likely to have occurred.  

Scott Harrington and Judy Harrington both filed affidavits to support the motion for an ex parte interim order.  The district court granted the order on December 11, 2007.  The affidavit of service for the ex parte interim order was dated and filed on December 17, 2007.  

[¶41] On December 26, 2007, Martin wrote to the court requesting “that no judgment be made or placed upon the case.  I am trying to get assistance and find a lawyer to respond to the motion.  However, with the holiday season upon us, the availability of finding an Attorney has been difficult.”  The district court received this letter on December 27, 2007, within the ten days required for her to request a hearing.  On January 17, 2008, Martin sent another request to the court asking it to continue her case.  The court denied her request on January 25, 2008.  After obtaining counsel, Martin moved for a custody investigator.  Scott Harrington resisted on the basis that the appointment of a custody investigator could impose a financial burden, and the court denied the motion.  On October 10, 2008, the district court held a hearing to determine custody.  On October 14, 2008, the district court filed its order awarding physical custody to Scott Harrington.  On October 31, 2008, the district court filed its redacted findings of fact, conclusions of law and order for judgment, which incorporated its October 14, 2008, order.  

[¶42] The majority, at ¶ 14, holds that “Martin waived her right to now claim the district court erred in temporarily placing the child with Harrington.”  Although Martin did not specifically request a hearing, she did write a letter to the court within ten days of being served with the ex parte order and requested that the court not proceed until she could secure an attorney.  Martin was served with the ex parte order on December 17, 2007; this was all happening close to the Christmas holidays, and she explained to the court in her letter of December 26, 2007, that she was told she would need to wait until after January 2, 2008, to get an attorney from Legal Services of North Dakota.  Martin was making an attempt to comply with the court’s ex parte interim order, but was not able to secure a lawyer within the ten-day limit.  She may not be able to challenge the appropriateness of the issuance of the ex parte interim order, but Martin can establish the facts that existed at the time of the issuance of that order to discredit Harrington and expose his means of obtaining custody of the minor child by false allegations under N.D.C.C. § 14-09-06.2(1)(l).  

[¶43] In its October 14, 2008, order, the district court states:  “Adding to the Courts [sic] difficulty is the Interim Order which is based upon an Affidavit that was filled with non-factual information.  I cannot stress how disappointing it is to have ‘factual representations’ made in an Affidavit which are not true.”  The majority holds that the district court erred “when it found Harrington’s affidavit ‘was not made specifically under 50-25.1-02, NDCC.’”  The majority then concludes:  “Although Harrington’s allegations contained the type of harm defined in section 50-25.1-02, the district court was not required to consider them under factor (l) because the court did not consider the allegations to be false.”  I disagree with the majority.  Because the district court found facts in the affidavit to be false, the district court was required as a matter of law to consider them under factor (l).

[¶44] Scott Harrington made allegations in his affidavits regarding the type of harm under N.D.C.C. § 14-09-06.2(1)(l), which requires the district court to consider “[t]he making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.”  Under N.D.C.C. § 50-25.1-

02(11) a “neglected child” means a deprived child as defined in N.D.C.C. ch. 27-20.  Under N.D.C.C. § 27-20-02(1)(b)(1), “‘Abandon’ means: . . . [a]s to a parent of a child in that parent’s custody: (1) To leave the child for an indefinite period without making firm and agreed plans, with the child’s immediate caregiver, for the parent’s resumption of physical custody.”  Also, under N.D.C.C. §27-20-02(8), “‘Deprived’ child means a child who:

a.  Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child’s physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child’s parents, guardian, or other custodian;

. . . 

c.  Has been abandoned by the child’s parents, guardian, or other custodian;

 . . . 

g.  Is present in an environment subjecting the child to exposure to a controlled substance, chemical substance, or drug paraphernalia as prohibited by section 19-03.1-22.2.”  

Scott Harrington alleges in his affidavit: 

Since [the child] has been in Dickinson, Juanita has seen her only a few times, primarily when her sister takes [the child] to Bismarck. . . . Juanita has made no indication that she wanted [the child] back (until recently as mentioned below) and has made no effort to get her. . . . 
Then because Juanita effectively abandoned [the child], she has started school here in Dickinson
.  (Emphasis added.)  

Scott Harrington also relied on an affidavit from Judy Harrington, which includes serious allegations:

I write principally out of concern for [the child] as I believe she has been neglected by her mother
. . . . [Juanita’s fiancé] grabbed her [the child] by the throat, pushed her against a wall, and held her there. . . . [the child] had nothing to eat that night. . . . Juanita and [Juanita’s fiancé] had some friends come over for a party.  There was alcohol and drugs at the party. . . . Juanita . . . kicked [her fiancé] out because he was doing drugs and had gotten her hooked and she had then gotten evicted from her apartment. . . . [Juanita] had friends help her move but they threw away some of [the child’s] favorite things. . . . [Juanita] again asked me to put [the child] through school so I registered her. . . . When it was time to go home, Juanita took a man home with her.  They [Juanita, the man, and the child] slept in one bed.  (Emphasis added.)

[¶45] The majority acknowledges Scott Harrington’s assertion that Martin abandoned the child, and finds this assertion supported stating:  “The record reflects that after Martin’s eviction in May 2007, she had minimal contact with the child through the summer because the child stayed with her grandmother in Dickinson.”  The majority is essentially making its own finding of fact.  I disagree with the majority.  The record contains evidence the district court should have considered under factor (l). 

[¶46] The district court did not make a finding that Martin either abandoned or neglected her daughter.  The record reflects that Martin and Judy Harrington had previously arranged for the child to stay with the grandmother for three summers.  In 2007, the parties made the same arrangement before Martin’s eviction.  Martin testified that she never informed Judy Harrington that the child did not have a place to stay with her over the summer.  Judy Harrington’s testimony indicated that Martin and the child spoke over the phone during the summer.  Testimony indicates that Judy Harrington and Martin also had an agreement that the child would return to Bismarck at the end of the summer.  Judy Harrington testified that when she had initially offered to enroll the child in Dickinson schools, Martin declined.  Martin testified that after three months of consideration and conversations with Judy Harrington, she decided to allow Judy Harrington to enroll the child in Dickinson.  Martin also testified that when she agreed to allow the child to enroll in Dickinson, Martin and Judy Harrington agreed that the child would return to Bismarck at Christmas break.  Martin shopped for school supplies with the child at the beginning of August. 

[¶47] Scott Harrington testified that during a conversation in October 2007, Martin again indicated that she would like to have the child back at Christmas break.  He also testified that he told her during that conversation, “I don’t see why not that [the child] can go back to Bismarck.”  Judy Harrington testified that the child did not live with Scott Harrington until Thanksgiving Day 2007.  The record does not indicate an intent to abandon the child.  Instead, the record reveals an agreement between the parties that the child would stay with Judy Harrington until the end of the summer of 2007, and then until Christmas break, respectively.  

[¶48] Scott Harrington also relied on Judy Harrington’s affidavit, which included allegations of neglect, abuse of the child, drug use in the presence of the child, and mistreatment of the child that were not proven at trial.  Scott Harrington was granted custody based on these two false affidavits.  The district court found that the only factor that favored Scott Harrington was that he had custody since the ex parte order, and has provided a stable environment since that order.  Public policy does not support acknowledging false accusations to obtain a change of custody, and then ignoring the falsity when determining the best interests of the child.  The district court did not specify which facts in which affidavit it found to be false.  However, evidence in the record reveals that these factual representations fall under factor (l).  

[¶49] I agree with the majority that the district court erred as a matter of law, but disagree that the court did not consider the allegations in the affidavits to be false.  The majority did not offer any basis for concluding the district court committed harmless error.  An error is harmless if it does not affect the substantial rights of the parties.  N.D.R.Civ.P. 61.  We have stated:  “Nonprejudicial mistakes by the trial court constitute harmless error and are not grounds for reversal.”  
Huesers v. Huesers
, 1998 ND 54, ¶ 11, 574 N.W.2d 880.  In this case, the error affected Martin’s right to have false information considered in the court’s analysis of the best interests of her child.  That is a mistake of law affecting her substantial right to the custody of her child.  If the court had considered the falsity of the affidavits, the factor could have weighed in Martin’s favor.  Therefore, I would remand for the district court to make a determination under factor (l) and reweigh the best interest factors accordingly.  
See, e.g.
, 
Haugrose v. Anderson
, 2009 ND 81, ¶ 18, 765 N.W.2d 677 (“Because our review of this case is significantly hampered by the district court’s failure to make specific, detailed findings on the relevant issues, we reverse and remand for further findings and explanation of the basis for the court’s determination.”); 
Huntress v. Griffey
, 2002 ND 160, ¶¶ 9-10,  652 N.W.2d 351 (reversing and remanding the district court’s judgment because the district court’s findings of fact with regard to the best interests of the child were inadequate); 
McDowell v. McDowell
, 2001 ND 176, ¶¶ 24, 38, 635 N.W.2d 139 (reversing and remanding for further findings because the Court was unable to determine what weight the district court gave to a best interest factor).

[¶50] I, therefore, respectfully dissent.  I would reverse and remand for the court to correctly apply the law and make further findings.

[¶51] Mary Muehlen Maring

FOOTNOTES
1:
The version of N.D.C.C. § 14-09-06.1 applicable to this case has since been repealed by 2009 N.D. Sess. Laws ch. 149, § 12.

2:
The version of N.D.C.C. § 14-09-6.2 applicable to this case has since been amended by 2009 N.D. Sess. Laws ch. 149, § 5.